

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| COMMUNITY REDEVELOPMENT ASSOCIATION,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF LOS ANGELES,<br><br>        Defendant. | CV 08-07584 ABC (JWJx)<br><br>[TENTATIVE] ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION |

## I. INTRODUCTION

This action, like many others before this Court including <u>World Wide Rush, LLC v. City of Los Angeles</u> (CV 07-00238), involves billboards and their modern equivalents, such as so called "supergraphic signs" and "digital displays." The Los Angeles Municipal Code ("LAMC") currently bans these signs, but has various exceptions that allow the construction and maintenance of signs despite the ban. In the <u>World Wide Rush</u> action, this Court issued an order that found some of the exceptions in sections 14.4.4.(B)(9) and (11) of Article 4 of the LAMC unconstitutional on their face. (See

generally CV 07-00238 Docket No. 154 ("World Wide Rush Order").) The Court also found section 14.4.6, governing freeway facing signs, unconstitutional as applied. (World Wide Rush Order at 24-31.) The City was enjoined from enforcing these portions of the municipal code. Plaintiff here, Community Redevelopment Association LLC, doing business as Liberty Media Group, now brings suit against the City and asks the Court to enjoin the City from enforcing the relevant code sections against Liberty Media, just as the Court enjoined the City from enforcing the code sections against the plaintiffs in World Wide Rush. In particular, the Court has before it Liberty Media's motion for a preliminary injunction. (Docket No. 7.)

The code sections and constitutional principles at issue in this case are the exact same sections and principles that were at issue in World Wide Rush. As to those issues, "the City recognizes that the Court will almost certainly reach the same decision that it reached in World Wide Rush." (Opp. (Docket No. 12) at 2.) The City is correct. The Court is not going to revisit the holding, or reasoning, in the World Wide Rush Order. Section 14.4.6 and the exceptions in sections 14.4.4(B)(9) and (11) are just as unconstitutional as applied to Liberty Media as they were against the plaintiffs in World Wide Rush.[1]

The question at issue is whether those sections are being--or need to be--applied against Liberty Media before Liberty Media can obtain the relief it seeks. The City's primary argument against injunctive relief is that Liberty Media simply has not shown that it owns rights to any billboards against which the City is enforcing the

---

[1] The Court appreciates the City's candor in clearly identifying its arguments, put forth to preserve its position for potential appeal, directed to the Court's ruling in World Wide Rush. (See Opp. at 2.)

2

relevant LAMC sections. In short, of the requirements for injunctive relief,[2] the City claims Liberty Media fails to show irreparable injury because the City has not taken any action as to the billboards identified.

## II. ANALYSES

### A. THE BILLBOARDS AND INJURY AT ISSUE

Liberty Media submits adequate evidence showing its right to place signs at three addresses: 1.) 15300 Ventura Boulevard; 2.) 11200 Pico Boulevard; and 3.) 11259 Olympic Boulevard. (Launghy Decl. (Docket No. 16) ¶¶ 2-3 (noting that Liberty Media has "executed leases with the owners of the properties" and has "erected supergraphic signs" at the properties).[3] Accordingly, there is no doubt that Liberty Media is subject to injury should the City enforce the relevant code provisions. As to whether or not that injury would be irreparable, when First Amendment rights to free speech are involved, irreparable injury is presumed. See Warsoldier v. Woodford, 418 F.2d 989, 1002 (9th Cir. 2005).

The Court does not find it relevant that the City has, or has not, actually taken steps to enforce the code provisions against Liberty Media's signs. City of Lakewood v. Plain Dealer Publ'g Co.,

---

[2] To obtain a preliminary injunction, a plaintiff must show "either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." Walczak v. EPL Prolong, Inc., 198 F.3d 725, 731 (9th Cir. 1999).

[3] The City filed objections to the Launghy Declaration, as well as to other evidentiary submissions from Liberty Media. The Court has considered these objections in reaching the conclusions herein and to the extent they are inconsistent with this ruling are **OVERRULED**. See Gates v. Deukmejian, 987 F.2d 1392, 1400 (9th Cir. 1992) (in addressing fee award district court not required to "make findings as to each of defendants' specific objections"); Truck Terminals, Inc. v. C.I.R., 314 F.2d 449, 454 (9th Cir. 1963) ("The fact that particular items of evidence were not mentioned in the findings or opinion of the Tax Court does not establish that they were not considered by that court.").

486 U.S. 750, 757 (1988) ("'Proof of an abuse of power in the particular case has never been deemed a requisite for attack on the constitutionality of a statute purporting to license the dissemination of ideas.'") (quoting Thornhill v. State of Alabama, 310 U.S. 88, 97 (1940)). The legislation exists and, unless addressed, is forever raised over Liberty Media like a cudgel. As a result, there is a strong likelihood of self-censorship. Indeed, the risk of self-censorship is always present in an ordinance that grants a municipality unfettered discretion. See City of Lakewood, 486 U.S. at 758 (requiring objective standards for approving speech because they add "an element of certainty fatal to self-censorship.").

Accordingly, to the extent Section 14.4.6 and the relevant exceptions in sections 14.4.4(B)(9) and (11) apply to Liberty Media, their application is unconstitutional. The City simply may not enforce those provisions against the signs identified.[4] However, the Court specifically notes "to the extent" the provisions apply because the City has enacted an Interim Control Ordinance that affects the general enforcement of the code sections at issue here.

**B.   THE INTERIM CONTROL ORDINANCE**

While this motion was being briefed, the City took steps to enact an Interim Control Ordinance ("ICO") that provides that "for a period of 90 days from the effective date of this ordinance, or until a permanent ordinance which amends the citywide provisions governing Off-Site Signs, including Digital Displays and Supergraphic Signs

---

[4] The Court does not find the parties' dispute as to whether or not the City has delayed inspection and the competing declarations of Jeff Homolya, James Buchan and Frank Lara relevant to this inquiry. (See e.g., Supp. Lara Decl. (Docket No. 24).) The code provisions at issue apply to supergraphic signs. The Launghy declaration clearly establishes that Liberty Media has such signs.

4

becomes effective, whichever occurs first:

    A. No building permit for an Off-Site Sign, including any Off-Site Digital Display or new Supergraphic sign shall be issued.

    B. No person shall erect, place, alter or construct any Off-Site Sign, including any Off-Site Digital Display or Supergraphic Sign pursuant to a building permit issued prior to the effective date of this ordinance."

(Request for Judicial Notice (Docket No. 18), Ex. A (ICO at 2-3).) The ICO apparently became effective on December 26, 2008. (Request for Judicial Notice at 2.) The exceptions to the ICO are different from the exceptions the Court found invalid in World Wide Rush. (ICO at 3.) Accordingly, the ICO would appear to temporarily moot the applicability of Sections 14.4.6 and 14.4.4(B)(9) and (11). The City does not seem to need those sections to prohibit signage, as the ICO appears to provide a blanket ban. However, the Court does not reach any conclusions as to the ICO as neither party has addressed or briefed its provisions.

    Accordingly, as noted above, the City is prohibited from enforcing section 14.4.6 and the relevant exceptions in sections 14.4.4(B)(9) and (11) against Liberty Media's signs at 15300 Ventura Boulevard, 11200 Pico Boulevard and 11259 Olympic Boulevard. The effect, if any, of the ICO is simply not before the Court.

### III. CONCLUSION

    The Court has addressed section 14.4.6 and the relevant exceptions in sections 14.4.4(B)(9) and (11) at length in the World Wide Rush Order. For the reasons set forth therein, section 14.4.6 and the relevant exceptions in sections 14.4.4(B)(9) and (11) are unconstitutional. Liberty Media's motion for a preliminary injunction is **GRANTED**. The City is **ENJOINED**, during the pendency of this litigation, from enforcing those provisions as to Liberty Media's

1 | signs at 15300 Ventura Boulevard, 11200 Pico Boulevard and 11259
2 | Olympic Boulevard.[5, 6]
3
4 | **IT IS SO ORDERED.**
5
6 | DATED: Jan 5, 2009        /s/ A.B. Collins
                              **AUDREY B. COLLINS**
7                             **UNITED STATES DISTRICT JUDGE**

---

[5] Liberty Media requested "the opportunity to submit a complete list of its sites and amend that list to add additional properties that it leases during the pendency of this litigation." (Reply at 10.) The Court will not grant that request. Because of the ICO, the legislative landscape has changed and no one has addressed whether the unconstitutional sections noted above are even needed for the City to prevent signage going forward.

[6] The Court also declines to address the request for a stay the City embedded in its opposition. If either party seeks a stay of this action pending the current appeal of the World Wide Rush Order, they should do so through the appropriate motion practice.