ANDREW T. KUGLER (SBN 192791)
*akugler@mayerbrown.com*
MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, California  90071-1503
Telephone:   (213) 229-9500
Facsimile:    (213) 576-8126

Attorneys for Plaintiff COMMUNITY
REDEVELOPMENT ASSOCIATION LLC,
dba LIBERTY MEDIA GROUP

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITY REDEVELOPMENT ASSOCIATION, LLC, a California limited liability company doing business as LIBERTY MEDIA GROUP,<br><br>                    Plaintiff,<br><br>        v.<br><br>CITY OF LOS ANGELES, a California charter city,<br><br>                    Defendant. | Case No. CV-08-07584 ABC (JWJx)<br><br>**NOTICE OF MOTION AND MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO AMEND FIRST PRELIMINARY INJUNCTION ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Declarations of France P. Luanghy, Terri Dickerhoff, Andrew T. Kugler, Michael A. Gatto and Stephanie Saenz; Request for Judicial Notice; [Proposed] Order]<br><br>Date:      August 17, 2009<br>Time:      10:00 a.m.<br>Place:     Courtroom 680<br>**Judge:    Hon. Audrey B. Collins** |

TO DEFENDANT AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 17, 2009, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Audrey B. Collins, in Courtroom 680 of the above-captioned Court, located at 255 E. Temple Street, Los Angeles, California 90012, Plaintiff Community Redevelopment Association, LLC, dba Liberty Media Group ("Plaintiff") will and hereby does move for a preliminary injunction order in this case.

On January 5, 2009, this Court found that Sections 14.4.4(B)(9), 14.4.4(B)(11) and 14.4.6 of the Los Angeles Municipal Code ("LAMC") were unconstitutional violations of the First Amendment and, therefore, issued a preliminary injunction order prohibiting defendant City of Los Angeles (the "City") from enforcing those sections against three of Plaintiff's sites. Plaintiff now seeks a second preliminary injunction order prohibiting the City from enforcing its Interim Control Ordinances ("ICOs"). The ICOs purport to temporarily prohibit any new off-site signs or supergraphics while the City prepares a new, comprehensive Sign Ordinance. However, the ICOs are themselves invalid for two reasons. First, the City has continued to violate the First Amendment by permitting certain favored speakers to erect signs notwithstanding the ICOs. Second, the City passed the ICOs without complying with the mandatory requirements for urgency zoning moratoria set out in California Government Code § 65858. As such, the ICOs are void *ab initio*, and the City should be enjoined from enforcing them against Plaintiff.

In addition, Plaintiff seeks an amendment to the Court's first preliminary injunction order. The first injunction only prohibited the City from enforcing LAMC §§ 14.4.4(B)(9), 14.4.4(B)(11) and 14.4.6 against three of Plaintiff's sites, where signs had been erected. The Court refused to extend the injunction to sites that did not yet have signs because it determined that the ICO mooted that

1

requested relief.  As demonstrated herein, however, the ICO is itself invalid.  Thus, the ICO no longer moots the need for the first injunction to protect all of Plaintiff's sites, regardless of whether there are signs currently erected at the sites.

Finally, the Court should also amend the first preliminary injunction order to include 6800-6820 Hollywood Boulevard.  The Court previously refused to extend the first injunction order to that site because Plaintiff had not applied for a permit there.  The facts have now changed.  Plaintiff has filed for a permit at that site, and the City has categorically refused to even process the application.   As such, Plaintiff is entitled to an amended injunction that includes that site as well, and that directs the City to withdraw the Orders to Comply that it issued on that site.

This motion is based on the attached Memorandum of Points and Authorities, the Declarations of France P. Luanghy, Terri Dickerhoff, Andrew T. Kugler, Michael A. Gatto and Stephanie Saenz, Request for Judicial Notice and [Proposed] Order filed concurrently herewith, the pleadings and papers on file in this action, and upon such further oral and documentary evidence that may be presented at the hearing on this motion.


Dated:  July 27, 2009                           MAYER BROWN LLP


                                                By: /S/ Andrew T. Kugler_____
                                                    Andrew T. Kugler
                                                Attorneys for Plaintiff COMMUNITY
                                                REDEVELOPMENT ASSOCIATION,
                                                LLC, DBA LIBERTY MEDIA GROUP

28805596

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................. 1

II. BACKGROUND ............................................................................. 3

    A.  The Interim Control Ordinances ....................................... 3

    B.  Despite the ICOs' Prohibition On New Signs, the City Continued to Approve Off-Site Signs and Supergraphics in High-Profile Developments ...................................... 6

    C.  The First Preliminary Injunction Order .............................. 9

III. ARGUMENT ................................................................................ 10

    A.  Standard for Granting A Preliminary Injunction Order .................... 10

    B.  The Court Should Issue a Second Preliminary Injunction Order Prohibiting The City From Enforcing the ICOs Against Plaintiff ..... 11

        1.  The ICOs are Invalid As An Impermissible Restriction on Commercial Speech ........................ 11

        2.  The ICOs Are Invalid *Ab Initio* Because the City Failed to Comply With California Government Code § 65858. ........ 15

    C.  The First Preliminary Injunction Order Should Be Amended To Cover All of Plaintiff's Sites ......................... 19

        1.  Because the ICO Is Itself Invalid, It No Longer Moots the Need for the First Preliminary Injunction Order to Cover All of Plaintiff's Sites. ...................... 19

        2.  Plaintiff Can Now Demonstrate A Substantial Likelihood of Success At 6800-6820 Hollywood Boulevard .................. 20

IV. CONCLUSION ............................................................................ 21

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Bank of the Orient v. Town of Tiburon,
  220 Cal.App.3d  992 (1990).................................................................17

Builders Ass'n of Santa Clara-Santa Cruz Counties v. Sup. Ct. of
  Santa Clara County,
  13 Cal.3d 225 (1974).......................................................................16

Building Industry Legal Defense Foundation v. City of San Juan Capistrano,
  72 Cal. App. 4th 1410 (1999)...............................................................17

Cal. Ins. Guarantee Assn. v. Worker's Compensation Appeals Bd.,
  136 Cal.App.4th 1528 (2006)...............................................................18

Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,
  447 U.S. 557 (1980) ...........................................................1, 11, 12, 13

City of Lakewood v. Plain Dealer Publishing Co.,
  486 U.S. 750 (1988) ........................................................................20

Clark v. City of Hermosa Beach,
  48 Cal. App. 4th 1152 (1996)...........................................................17, 19

Covenant Media California, LLC v. City of Huntington Park,
  377 F. Supp. 2d 828 (C.D. Cal. 2005)....................................................17

Desert Outdoor Advertising, Inc. v. City of Oakland,
  506 F.3d 798 (9th Cir. 2007) ...............................................................11

Greater New Orleans Broadcasting Ass'n v. U.S.,
  527 U.S. 173 (1999) .........................................................................12

Martin v. Superior Court (City of Sierra Madre),
  234 Cal. App. 3d 1765 (1991).........................................................17, 19

Metro Lights v. City of Los Angeles,
  551 F.3d 898 (9th Cir. 2009)................................................................14

Metromedia v. City of San Diego,
  453 U.S. 490 (1981) .........................................................................14

NRDC v. Winter,
  518 F.3d 658 (9th Cir. 2008) ...............................................................10

Sammaratano v. First Judicial Dist. Ct.,
  303 F.3d 959 (9th Cir. 2002)................................................................11

Walczak v. EPL Prolong, Inc.,
  198 F.3d 725 (9th Cir. 1999) ...............................................................10

ii
MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO AMEND FIRST PRELIMINARY
INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28805596

1

# TABLE OF AUTHORITIES
## (*continued*)

2

Page(s)

3

Warsoldier v. Woodford,
    418 F.3d 989 (9th Cir. 2005) ................................................................. 14

4

World Wide Rush, LLC v. City of Los Angeles,
    579 F.Supp.2d 1311 (C.D. Cal. 2008) ..................................................... passim

5

6

7

STATUTES

8

United States Code, title 28
    § 1367 ...................................................................................................... 15

9

California Government Code
    § 65803 ............................................................................................... 15, 16
    § 65850(a) ................................................................................................. 18
    § 65858 ..................................................................................................passim
    § 65858(a) .................................................................................. 15, 17, 18, 19
    § 65858(d) ........................................................................................... 15, 19
    § 65858(f) ............................................................................................ 15, 19

10

11

12

13

Los Angeles Municipal Code,
    Chapter 1, Article 4.4 ................................................................................. 3
    § 14.4(B)(11) .................................................................... 9, 19, 20, 21
    § 14.4.4(B)(9) ................................................................... 9, 19, 20, 21
    § 14.4.6 .............................................................................. 9, 19, 20

14

15

16

17

LEGISLATIVE MATERIALS

18

California Assembly Committee on Housing and Community Development,
    Bill Analysis of SB 1098 (June 27, 2001) ............................................... 16

19

California Assembly Committee on Local Government,
    Bill Analysis of SB 1098 (June 28, 2001) ............................................... 16

20

21

California State Senate Bill Analysis .............................................................. 16

22

Senate Third Reading of SB 1098 .................................................................. 16

23

24

OTHER AUTHORITIES

25

*Katherine Stone*, California Environmental Law & Land Use Practice,
    § 63.21 ...................................................................................................... 15

26

27

28

MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO AMEND FIRST PRELIMINARY
INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28805596

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Once again, the City's willingness to ignore its laws to benefit favored, high-profile developments has landed the parties back before this Court.  Previously, the City found itself in hot water for its willingness to ignore the ban on freeway-facing signs for favored projects at the Staples Center and 15th Street SUD, among other things.  That disparate treatment led this Court to invalidate the City's ban on freeway-facing signs under Central Hudson[1].  World Wide Rush, LLC v. City of Los Angeles, 579 F.Supp.2d 1311, 1324-1328 (C.D. Cal. 2008) (the "World Wide Rush Action").

In response, the City began working on a new sign ordinance.  At the same time, it came under intense political pressure to immediately halt the proliferation of new signs, so on December 17, 2008, the City enacted an interim ordinance (the "ICO") that purported to prohibit new signs while it considered the new sign ordinance.

Unfortunately, the City did not learn from its mistakes.  Despite the fact that the ICO prohibited all new signs as of December 26, 2008, the City continued to approve large off-site signs and supergraphics at high-profile developments.  For example, the City recently inspected and approved eight large off-site signs and supergraphics at the new W Hotel at 6250 Hollywood Boulevard.  The City also recently inspected and approved two large, off-site roof signs at 6904 Hollywood Boulevard.  These ten signs were clearly prohibited by the ICO, yet the City chose to ignore the law and approve them.

During the same period, the City continued to use the ICO as a weapon against Plaintiff and its lessors.  For instance, the City categorically refused to even

---

[1] Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557 (1980).

process Plaintiff's permit applications, citing the ICO's ban on new signs. Declaration of Terri Dickerhoff ("Dickerhoff Decl."), ¶ 3, Exh. A, filed concurrently herewith.  Moreover, the City trumpeted the ICO as a reason to deny Plaintiff injunctive relief against the unconstitutional provisions of the underlying sign ordinance.  This Court agreed with the City's argument, holding that any relief against the underlying bans on off-site signs, supergraphics and freeway-facing signs was moot because the ICO independently prohibited new signs.  As a result, Plaintiff has not been able to erect signs at many of its sites, despite being ready, willing and able to do so.

Further compounding the inequity of the City's conduct, the City failed to even comply with the minimal procedural protections required for temporary zoning moratoria under state law.  California Government Code § 65858 outlines those protections.  Among other things, it requires a charter city like Los Angeles to issue written reports if it chooses to extend an interim ordinance beyond forty-five days.  It also prohibits a charter city from enacting a second interim ordinance if it involves the same circumstances that led to the first one.  The purpose behind these protections is simple.  They are meant to prevent a charter city like Los Angeles from prohibiting unpopular land uses (such as the erection of billboards or affordable housing) with indefinite moratoria.

However, the City again chose to ignore the law, passing multiple extensions of its ICO without issuing the required reports, and passing an improper second ICO that was based on the same circumstances that led to the first one.  That second ICO now includes draconian penalties that, of course, only apply if the City chooses to enforce the law against a site.  In other words, they apply to Plaintiff and its lessors, but not to the high-profile developments that the City favors.

As a result of the City's failure to enforce the two ICOs in an equal manner and to adhere to the procedural protections found in state law, the ICOs are invalid

and the Court should issue a second injunction prohibiting the City from enforcing them against Plaintiff.  In turn, because the ICOs are now invalid, they no longer moot the need for Plaintiff to protect all of its sites from the unconstitutional provisions of the underlying sign ordinance.  As such, the first preliminary injunction order should be extended to protect all of Plaintiff's sites, including those sites at which a sign has not yet been erected.

## II.     BACKGROUND

### A.     The Interim Control Ordinances

Last September, after this Court entered a permanent injunction in the World Wide Rush Action, the City came under heavy political pressure to amend its sign ordinance, primarily in response to the digital billboards that were being proliferated throughout the City pursuant to a settlement agreement that the City had signed with three of the largest billboard operators.  *See* Declaration of Andrew T. Kugler ("Kugler Declaration"), Exh. A, filed concurrently herewith (LA Weekly article discussing community uproar over digital billboards).  In response, the City began considering how to craft a new zoning ordinance[2] that would regulate signs without running afoul of the First Amendment.

It quickly became clear, however, that developing and enacting a new ordinance would take considerable effort.  So the City decided to buy itself some time.  On December 17, 2008, the City Council enacted Ordinance No. 180445 (the "ICO"),[3] which temporarily prohibited the issuance of any new building permits for off-site signs and supergraphics.  The ICO also prohibited any person

---

[2] The City's sign ordinance is part of its zoning code.  *See* LAMC, Chapt. 1, Art. 4.4.

[3] The various iterations of the ICO and extensions thereof are attached as Exhibits A–D in the Request for Judicial Notice ("RJN"), filed concurrently herewith.

from erecting, placing, altering or constructing an off-site sign or supergraphic unless, *prior to the effective date* of the ICO:

1)    A permit was issued for the sign; and

2)    The permit holder performed substantial work on the sign and incurred substantial liabilities in reliance on the permit.

In order to demonstrate that substantial work had been performed, work on the sign must have progressed to the point that at least one of the inspections required by the LAMC had been completed, and the inspection must have resulted in an approval by the Department of Building and Safety.  RJN, Exh. A.  The Court has already interpreted this to require a *final* inspection and approval of the sign prior to the effective date of the ICO.  In fact, in its Order re Billboard Cases, the Court refused to give World Wide Rush relief from a citation based on the ICO, because it could not establish that the *final* inspection and approval had occurred prior to the effective date of the ICO.  Specifically, the Court found:

> [The LAMC] calls for seven different inspections, only one of which
> seems applicable here:  the final inspection. . . .  Under the ICO, the
> inspection (and approval) must have occurred **prior** to December 26,
> 200[8]. . . .  Here—even if one sets aside the permit requirement—the
> WWR Plaintiffs have failed to establish that the sign was ready for
> such an inspection by December 25, 200[8].  Indeed, a final inspection
> occurs when 'the work is completed.'  See Code § 91.108.5.  The
> work was not complete until after the effective date of the ICO. . . .
> Accordingly, the ICO citation was valid."

World Wide Rush, LLC v. City of L.A., 605 F.Supp.2d 1088, 1107 (C.D. Cal. 2009) (emphasis included).

The purpose behind the ICO was clear.  As the preamble states, the ICO was enacted because of the "strong possibility that the . . . court's ruling in *World Wide*

4

*Rush* will trigger a proliferation of new Off-Site Signs while the City undertakes a comprehensive review of the existing sign ordinance and formulates recommendations for updating the ordinance." RJN, Exh. A. The preamble further states that "it is necessary to halt the proliferation of new Off-Site Signs, Supergraphic Signs or alterations to existing Off-Site Signs, including conversion of existing conventional off-site signs to digital signs, until permanent regulations can be enacted and put into place. . . ." *Id.*

The original ICO became effective on December 26, 2008, for an initial period of ninety days, with two possible forty-five day extensions. *Id.* Because the City was not able to develop a new sign ordinance in a timely fashion, the City Council passed the first forty-five day extension on February 20, 2009, and the second forty-five day extension on April 22, 2009. *Id.*, Exhs. B–C. Prior to these extensions, the City Council did not issue any written reports describing the measures taken to alleviate the condition that led to the adoption of the ICO in the first place.

After six months, the City still needed more time, so on June 9, 2009, the City Council passed a second interim ordinance, Ordinance No. 180745 ("ICO No. 2"). RJN, Exh. D. Although there were some differences, such as enhanced penalty provisions, the circumstances that led to ICO No. 2 were identical to the circumstances that led to the original ICO – i.e., the City wanted to continue prohibiting new off-site signs and supergraphics while it considered changes to its zoning code to deal with the World Wide Rush decision. ICO No. 2 became effective on June 25, 2009, and is valid for ninety days. *Id.* It is currently set to expire on September 23, 2009.

**B.** **Despite the ICOs' Prohibition On New Signs, the City Continued to Approve Off-Site Signs and Supergraphics in High-Profile Developments**

As stated above, since December 26, 2008, the ICOs have prohibited any new off-site signs and supergraphics in the City, with only one exception.  In order to qualify for that lone exception, ***prior to December 26, 2008***, a permit must have been issued for the sign, and the permit holder must have performed substantial work and incurred substantial liabilities in reliance on the permit.  In addition, ***prior to December 26, 2008***, an inspection of the sign must have occurred, and that inspection must have resulted in a final approval by the Department of Building and Safety.[4]  RJN, Exh. A; <u>World Wide Rush</u>, 605 F.Supp.2d at 1107.

Notwithstanding this clear prohibition, the City ignored the law for high-profile developments.  For example, on June 2, 2009, the City issued eight permits for off-site signs on the new W Hotel at 6250 Hollywood Boulevard.  Declaration of Stephanie Saenz ("Saenz Decl."), Exh. A, filed concurrently herewith.  No doubt realizing that these new permits would present a problem, the City tried to cover its tracks by claiming that the new permits "relate back" to a single permit hurriedly issued on November 21, 2008 (about 3 weeks before the ICO was enacted).  According to the City, the eight new permits were only issued to give each sign its own permit number.  *See, e.g.,* Saenz Decl., Exh. A, pg. 2.  However, notwithstanding the City's excuse, the ICO prohibits new sign permits ***without exception***.

---

[4] ICO No. 2 altered the language of this exemption a bit; however, the concept remained the same.  All new off-site signs and supergraphics are banned unless a permit was issued before December 26, 2008, and the "Department of Building and Safety determines that both substantial liabilities have been incurred, and substantial work has been performed on site, in accordance with the terms of that permit. . . ."  RJN, Exh. D.

MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28805596

But even assuming for the sake of argument that the November 2008 permit was valid, the ICO still should have prohibited the commencement or continuation of construction of these signs, unless they fit within the lone exception to the ICO. The City apparently claims that they do, as the permit record states that the "City Attorney has determined that these signs were vested per ICO 180,445." *See, e.g.,* Saenz Decl., Exh. A, pg. 2.   However, that is not the case.   City records demonstrate that substantial work was not performed on these signs until well *after* the ICO became effective.   Specifically, the records indicate that in January and March 2009, a City inspector named James Buchan visited the site and noted that the signs were "not ready for inspection."   Declaration of France P. Luanghy ("Luanghy Decl."), ¶ 2 and Exh. A, filed concurrently herewith.   According to Inspector Buchan, that notation mostly likely means that on those dates, he could not perform an inspection because no sign had been erected.   Declaration of Michael A. Gatto ("Gatto Decl."), ¶ 5, filed concurrently herewith.   Inspector Buchan's notation is consistent with marketing materials that were distributed by the sign operator, which indicate that signs were not even available for lease at this property until March 2009.  Luanghy Decl., Exh. B.  Thus, even if the November 2008 permit could validly cover all eight signs, the permit holder did not perform substantial work on the signs and did not incur substantial liabilities in reliance on the permit until well *after* December 26, 2008.  As such, the ICO exception does not apply to them, and the City should not have allowed work to commence or continue on any of these signs.

The exception does not apply for a third reason.  As stated above, this Court has already acknowledged that to take advantage of the lone exception to the ICO, an inspection and approval of the sign must have taken place prior to December 26, 2008.  However, City records demonstrate that the Department of Building and Safety did not even issue its *first* approval for these signs until May 13, 2009.

MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28805596

Luanghy Decl., ¶ 2 and Exh. A.[5]  As such, these signs clearly do not qualify for the lone ICO exception.

Nevertheless, instead of prohibiting the signs or issuing Orders to Comply when they were erected, the City once again turned a blind eye for a high-profile development.  Indeed, even the DBS Inspector expressed surprise that the City allowed these signs to be erected.  Gatto Decl., ¶ 4.  As a result, several massive off-site signs and supergraphics in various stages of completion now grace that building, which is itself still under construction.[6]  Luanghy Decl., Exh. C.

Another example of the City violating its own ICO is a high-profile development at 6904 Hollywood Boulevard.  City records indicate that a permit for an off-site roof sign was issued for this site on June 3, 2008.  Saenz Decl., Exh. B.  However, substantial work on the sign did not occur until well after the ICO became effective.  Indeed, a picture taken of this site on December 28, 2008 (after the ICO effective date), reveals that as of that date, there was no sign structure on the roof of the building.  Luanghy Decl, Exh. D.  City records further demonstrate that the *first* approval for the roof sign was not granted by DBS until May 20,

---

[5] According to Inspector Buchan, all DBS inspections and approvals for these signs should appear on the property reports available online to the public.  Gatto Decl., ¶ 3.  Thus, the property report attached as Exhibit A to the Luanghy Decl. should be a complete history of inspections and approvals for the eight signs permitted at 6250 Hollywood Boulevard.

[6] Indeed, it comes as little surprise that the City decided to ignore its ICO for this project.  This development has received millions of dollars in assistance from the Community Redevelopment Agency, and has already been granted numerous exemptions from the Hollywood SUD by the Central Area Planning Commission.  Luanghy Decl., ¶¶ 8-9, Exhs. G-H.  In that sense, this conduct is just a continuation of the same pattern of disparate treatment that occurred in <u>World Wide Rush</u>, where the City decided to ignore the ban on freeway-facing signs in order to favor two high-profile projects at the Staples Center and 15th Street SUD.

MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28805596

2009.  *Id.*, ¶ 6 and Exh. E.[7]  Nevertheless, the City again turned a blind eye on the ICO for a favored, high-profile development, and finalized the permit in May 2009.  *Id.*  As a result, there is now a massive off-site roof sign (with two faces) on that building.  *Id.*, Exh. F.[8]

### C.   The First Preliminary Injunction Order

On January 5, 2009, this Court found that LAMC §§ 14.4.4(B)(9), 14.4.4(B)(11) and 14.4.6 violated the First Amendment and, as such, issued a preliminary injunction prohibiting the City from enforcing them against three of Plaintiff's sites.[9]  Those three sites, however, did not represent all of the sites at issue in this litigation, so Plaintiff requested an opportunity to submit a complete list.  At the hearing, the Court agreed to entertain a stipulation or motion to add additional sites, and ordered the parties to meet and confer on that issue.  The parties could not agree, so on February 2, 2009, Plaintiff filed a motion to amend the preliminary injunction to add sixteen additional sites at which Plaintiff either had an agreement or letter of intent to erect a sign.

On March 18, 2009, the Court denied Plaintiff's motion.  As to fifteen of the sites, the Court found that Plaintiff had not yet erected signs and that, as a result, the relief requested by Plaintiff was moot because the ICO temporarily banned all

---

[7] As stated in footnote 4, according to Inspector Buchan, the property report attached as Exhibit E to the Luanghy Decl. should be a complete history of all inspections and approvals for 6904 Hollywood Boulevard.

[8] Again, it is no surprise that the City decided to ignore the ICO for this project, which is being developed by one of CRA's most active partners.  Like the W Hotel, this project has already been granted numerous exemptions from the Hollywood SUD by the Central Area Planning Commission.  Luangy Decl., ¶ 10, Exh. I.

[9] Those sites are located at 15300 Ventura Boulevard, 11200 Pico Boulevard and 11259 Olympic Boulevard in the City of Los Angeles.

1  new signs.[10]  In other words, the Court refused to extend the injunction because
2  even if it did, Plaintiff would still be prohibited from erecting signs at these fifteen
3  signs under the ICO.

4      As to the sixteenth site located at 6800-6820 Hollywood Boulevard (where
5  Plaintiff did have a sign erected), the Court found that Plaintiff had not shown a
6  substantial likelihood of success because it had not applied for a sign permit at that
7  site.  Those facts have now changed.  On July 24, 2009, Plaintiff applied for a sign
8  permit at 6800-6820 Hollywood Boulevard.  Dickerhoff Decl., ¶ 3, Exh. A.
9  However, as with every other permit application submitted by Plaintiff to the City,
10 the City categorically refused to even process it.  *Id.*

11 **III.   ARGUMENT**

12      **A.   Standard for Granting A Preliminary Injunction Order**

13      A party is entitled to a preliminary injunction if the record establishes that
14 the party has demonstrated "(1) a likelihood of success on the merits and the
15 possibility of irreparable injury; or (2) that serious questions going to the merits
16 were raised and the balance of hardships tips sharply in its favor."  Walczak v. EPL
17 Prolong, Inc., 198 F.3d 725, 731 (9th Cir. 1999); *see also* NRDC v. Winter, 518
18 F.3d 658, 677 (9th Cir. 2008).  As the Ninth Circuit has explained, "[t]hese two
19 alternatives represent extremes of a single continuum, rather than two separate
20 tests.  Thus, the greater the relative hardship to the [moving party] the less
21 probability of success must be shown."  Walczak, 198 F.3d at 731 (internal
22 quotations and citations omitted).  The Ninth Circuit has further explained that,
23 under these standards, "the fact that a case raises serious First Amendment

24 _____

25 [10] Plaintiff had actually erected a sign at one of these sites (11625 Olympic
26 Boulevard) prior to the effective date of ICO.  Before the Court issued its final
   order denying the amended injunction, Plaintiff attempted to clarify this fact with a
27 supplemental declaration.  However, the Court denied Plaintiff's *ex parte* request
   for leave to file the declaration.

28

1   questions compels a finding that there exists the potential for irreparable injury, or

2   that at the very least the balance of hardships tips sharply in [favor of the party

3   alleging First Amendment injury]."   Sammaratano v. First Judicial Dist. Ct., 303

4   F.3d 959, 973 (9th Cir. 2002) (internal citations omitted).

**B.      The Court Should Issue a Second Preliminary Injunction Order Prohibiting The City From Enforcing the ICOs Against Plaintiff**[11]

**1.      The ICOs are Invalid As An Impermissible Restriction on Commercial Speech**

9   As this Court recognized in its World Wide Rush opinion, Central Hudson

10  sets out a four-part test for regulating commercial speech:  (1) whether the speech

11  concerns lawful activity and is not misleading; (2) whether the restriction seeks to

12  implement a substantial government interest; (3) whether the restriction directly

13  advances that interest; and (4) whether the restriction reaches no further than

14  necessary to accomplish the government's stated objectives.   Central Hudson Gas

15  & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 566 (1980).   As in World

16  Wide Rush, the last two factors are most relevant here.

17  In World Wide Rush, the plaintiffs claimed that the City's ban on freeway-

18  facing signs was invalid because the City applied it in a discriminatory manner.

19  Plaintiff here is making the exact same claim against the ICO.   See Desert Outdoor

20  Advertising, Inc. v. City of Oakland, 506 F.3d 798, 805 (9th Cir. 2007) (noting that

21  an as-applied challenge involves "discriminatory enforcement of a speech

22  restriction that amounts to viewpoint discrimination in violation of the First

23  Amendment.  It is for this reason that a successful as-applied challenge does not

24  render the law itself invalid, but only the particular application of the law.  An as-

25

26  [11] Pursuant to the parties' stipulation, Plaintiff has filed an amended complaint that

27  includes the challenges to the ICO articulated in this motion.  For the Court's convenience, the amended complaint is attached as Exhibit B to the Kugler Decl.

28

applied challenge goes to the nature of the application rather than the nature of the law itself.").

Like World Wide Rush, therefore, this claim should be governed by Greater New Orleans Broadcasting Ass'n v. U.S., 527 U.S. 173 (1999).  As this Court previously held, under Greater New Orleans, when a governmental entity works at cross purposes to its stated interests, a commercial speech ban falls under Central Hudson.  World Wide Rush, 579 F.Supp.2d at 1326-27.  Applying that authority, this Court already invalidated the City's ban on freeway-facing signs because the City ignored that ban when it permitted two freeway-facing signs at the Staples Center and four freeway-facing signs in the 15th Street SUD.  Id.

The ICOs must fail for the exact same reason.  Despite the fact that the ICOs have banned all new signs since December 26, 2008, the City continued to approve certain favored signs.  Plaintiff has uncovered eight examples at the new W Hotel, as well as two roof signs at 6904 Hollywood Boulevard.  Luanghy Decl, ¶¶ 2-7; Exhs. A-F; Saenz Decl., Exhs. A-B.  In each of these examples, the City ignored the ICOs in order to allow signs at favored, high-profile developments, while simultaneously refusing to even process any of Plaintiff's permit applications. There are no doubt other examples that Plaintiff will uncover during the discovery process.

The City's cavalier attitude toward enforcing its sign laws, including an ICO that purports to be a total ban on all new signs while the City figures out how to deal with a federal court decision declaring its sign ordinance unconstitutional, is not an isolated incident.  It is part of a long history of disparate treatment.  For example, in 2006, the City signed settlement agreements that allowed two of the largest and most politically powerful sign operators – CBS Outdoor and Clear Channel – to convert over 800 of their existing sign structures to digital displays, notwithstanding the City's ban on alterations to existing off-site signs (LAMC

§ 14.4.4(B)(11)) that applied to every other sign operator, including Plaintiff. Moreover, as recognized by this Court in the World Wide Rush Action, notwithstanding a ban on freeway-facing signs, the City permitted two such signs at the Staples Center and four such signs in the 15th Street SUD.  <u>World Wide Rush</u>, 579 F.Supp.2d at 1327-28.  Plaintiff also presented evidence last February demonstrating that the City ignored its sign bans when it permitted two large, freeway-facing supergraphics at the Nokia Theatre in 2007, and a freeway-facing sign at 9014 West National Boulevard in 2008.  *See* Declaration of France P. Luanghy in Support of Opposition to Defendant's Motion for Reconsideration of the Court's Preliminary Injunction Ruling, filed on February 9, 2009, Exhs. B-H. And there is no end in sight.  Two weeks ago, the City Planning Commission voted to grant exclusive signage rights to AEG for 40,000 square feet of new signs at the Los Angeles Convention Center.  Kugler Decl., Exh. D.  These new signs – equivalent to an estimated 74 full-size conventional billboards – will face the 10 and 110 Freeways.

Put simply, it would be intellectually inconsistent to treat the City's disparate treatment under the ICO any differently than the City's disparate treatment under the freeway-facing sign ban.  The City previously undermined its interest in the freeway-facing sign ban by continuing to permit certain freeway-facing signs.  The City has now undermined its interest in the ICO by continuing to permit large off-site signs and supergraphics for certain high-profile developments. For this reason, the ICOs are an invalid restraint on commercial speech under <u>Central Hudson</u>, and the City should be enjoined from enforcing them against Plaintiff.<sup>12</sup>

---

<sup>12</sup> As repeatedly held by this Court, because Plaintiff has demonstrated a likelihood of prevailing on the merits of its First Amendment challenge to the ICO, irreparable injury is presumed.  *See* <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 1002

<span style="float:right">(*Footnote continued on following page*)</span>

13

1    To the extent that the City argues in opposition that the Ninth Circuit's

2    decision in Metro Lights v. City of Los Angeles, 551 F.3d 898 (9th Cir. 2009)

3    mandates a different result, that argument should again be rejected.  As this Court

4    previously held, Metro Lights does not abrogate the Court's World Wide Rush

5    reasoning.  See World Wide Rush, 605 F.Supp.2d at 1116.  Indeed, Metro Lights

6    involved a completely different set of facts and legal authorities.  Most

7    significantly, in Metro Lights, the issue was whether the City had the authority to

8    **enact** a general exemption to the off-site ban for all signs on public rights-of-way.

9    Here, the claim centers on the City's actual **application** of the ICOs after they were

10   enacted.  While Metro Lights arguably suggests deference to the City's legislative

11   judgment as to whether to exempt general classes of signs (such as all on-site signs

12   or all signs on public rights-of-way), it does not give the City the authority to grant

13   *ad hoc* exceptions that discriminate within a particular class of sign (i.e., in a way

14   that favors certain privately-own signs constructed after the ICO became effective,

15   over other privately-owned signs).  *Compare* Metromedia v. City of San Diego,

16   453 U.S. 490, 502-03 (1981) (City could permissibly favor one type of commercial

17   speech – on site advertising – over another type – off-site advertising).  That is

18   precisely what the City did here, in allowing the signs at the new W Hotel and at

19   6904 Hollywood Boulevard.  Metro Lights, therefore, does not absolve the City of

20   its disparate treatment.[13]

21

22   (*Footnote continued from previous page*)

23   (9th Cir. 2005) ("The loss of First Amendment freedoms, for even minimal periods
     of time, unquestionably constitutes irreparable injury for purposes of the issuance
     of a preliminary injunction."); Order Granting Motion for Preliminary Injunction,

24   issued by the Court on January 5, 2009, pg. 3; World Wide Rush, LLC v. City of

25   Los Angeles, 563 F.Supp.2d 1132, 1152 (C.D. Cal. 2008).

26   [13] Note that Plaintiff included a complete analysis of why Metro Lights does not

27   apply to this case in its Opposition to the City's Motion for Reconsideration of the
     Court's Preliminary Injunction Ruling, filed on February 9, 2009.

28

MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO AMEND FIRST PRELIMINARY
INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28805596

### 2.   The ICOs Are Invalid *Ab Initio* Because the City Failed to Comply With California Government Code § 65858.[14]

"Moratoria are drastic techniques [that] may postpone rather than solve growth problems."  *Katherine Stone*, California Environmental Law & Land Use Practice, § 63.21 (a copy of which is attached as Exh. E to the Kugler Decl.).  As such, the California Government Code establishes strict parameters that govern the ways in which cities and counties can impose these drastic techniques.

For our purposes, California Government Code § 65858[15] outlines the system of checks and balances that cities and counties must follow when enacting an interim ordinance that prohibits a permissible land use while they consider a new, permanent zoning proposal.  For example, under § 65858(a), a city or county must enact such temporary prohibitions by a four-fifths vote, and they can only be effective for an initial period of forty-five days, with at most two possible extensions.  Section 65858(d) further states that ten days prior to the expiration of an interim ordinance or any extension thereof, the legislative body must issue a written report describing the measures taken to alleviate the condition which led the body to adopt the "drastic technique" of a moratorium.  And if an interim ordinance expires, § 65858(f) states that the legislative body may enact another interim ordinance only if it involves a different event, occurrence or set of circumstances than the original one.

Originally, there was some confusion as to whether § 65858 applied to charter cities like Los Angeles.  The confusion mainly stemmed from Government Code § 65803, which exempted charter cities from the provisions of Chapter 4 of

---

[14] The Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

[15] A copy of § 65858 is attached as Exhibit E to the RJN.

MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO AMEND FIRST PRELIMINARY
INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28805596

the Government Code (which includes § 65858), unless they were specifically mentioned in a provision.  For years, charter cities used § 65803 to argue that the minimal procedural guarantees of § 65858 did not apply to them.  *See* Builders Ass'n of Santa Clara-Santa Cruz Counties v. Sup. Ct. of Santa Clara County, 13 Cal.3d 225, 236 (1974).

However, the Legislature cleared up any confusion in 2001, when it amended § 65858 to specifically include charter cities.  The Legislature enacted this amendment because it was alarmed by the conduct of certain charter cities, which were using their moratoria power to prohibit unpopular land uses such as affordable housing.  *See* California Assembly Committee on Housing and Community Development, Bill Analysis of SB 1098 (June 27, 2001) ("NIMBY" attitudes toward unpopular uses like affordable housing are causing some charter cities to prohibit such housing with indefinite moratoria, ostensibly while they study the issue).  (A copy of this bill analysis is attached as Exhibit F to RJN.)  The intent was clear.  By adding "charter cities" to § 65858, the Legislature intended to prohibit charter cities from extending beyond forty-five days, any interim ordinance that denies a permissible land use (such as affordable housing), unless the cities meet the criteria of § 65858.  *Id.*  In other words, the Legislature wanted to close any possible loopholes that allowed charter cities to use baseless, indefinite moratoria to prevent unpopular uses.  *See* California Assembly Committee on Local Government, Bill Analysis of SB 1098 (June 28, 2001); California State Senate Bill Analysis, Senate Third Reading of SB 1098, (the amendment resolved California cities' use of the moratorium power as "a trump card against politically 'undesirable' land uses, such as low-income housing").[16]

---

[16] These legislative history documents are attached as Exhibits G-H to RJN.

MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28805596

While affordable housing may have been the impetus behind the amendment, it is clear from the face of § 65858 that its procedural safeguards are not limited to low-income housing moratoria.   As stated in § 65858(a), the protections apply to any temporary prohibition on permissible land uses that may conflict with a pending zoning proposal.   Indeed, case law is replete with examples of § 65858 being applied beyond the realm of affordable housing.   *See, e.g.,* Covenant Media California, LLC v. City of Huntington Park, 377 F. Supp. 2d 828 (C.D. Cal. 2005) (65858 used to pass billboard moratorium); Clark v. City of Hermosa Beach, 48 Cal. App. 4th 1152, 1173 (1996) (after city's attempt to pass 65858 moratorium on tall buildings failed, it could not implement *de facto* moratorium by refusing to process applications to erect tall buildings); Martin v. Superior Court (City of Sierra Madre*)*, 234 Cal. App. 3d 1765 (1991) (city could not serially pass 65858 moratoria on hillside development under the theory that each new ordinance was a new moratorium with different time limits); Building Industry Legal Defense Foundation v. City of San Juan Capistrano, 72 Cal. App. 4th 1410 (1999) (despite 65858 moratorium on all development, city required to continue processing permits, despite moratorium, because the law did not allow city to stop processing permit applications during the pendency of the moratorium); *see also* Bank of the Orient v. Town of Tiburon, 220 Cal.App.3d 992, 1005 (1990) (when the Legislature passed § 65858, it "intended to occupy the entire field of interim zoning ordinances").

Here, the ICOs are clearly subject to § 65858.   The ICOs are interim ordinances that temporarily prohibit an unpopular land use – i.e., billboards and supergraphics – while the City considers proposals to amend its zoning code to deal with the World Wide Rush decision.   The City was thus required to comply with § 65858 when it enacted the ICOs.

In opposition, the City may try to claim that the procedural protections of § 65858 are not mandatory and that it had the ability to enact the ICOs under its own urgency measure procedures.  But that reading would contradict the express intent of the Legislature and common sense.  The whole point of adding "charter cities" to the language of § 65858 was to limit the ability of charter cities to prohibit unpopular land uses with indefinite moratoria.  RJN, Exhs. F-H.  If a charter city could ignore § 65858 simply by enacting such moratoria under its own urgency measure procedures, then the protections found in § 65858 would be completely meaningless.  Statutes cannot be read in this manner.  Cal. Ins. Guarantee Assn. v. Worker's Compensation Appeals Bd., 136 Cal.App.4th 1528, 1534 (2006) (a statute "must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity") (internal citations omitted).  Put simply, § 65858 outlines the minimal procedures that a charter city must follow if it wants to prohibit a land use while considering permanent changes to its zoning code.[17]

Here, the City failed to comply with § 65858.  First, the ICO was effective for an initial period of ninety days, despite the fact that section 65858(a) only allows an initial period of forty-five days.  RJN, Exh. A.  Second, the City enacted two extensions to the ICO, one on February 20, 2009 and the second on April 22, 2009, so that it could have more time to work on revisions to its zoning code.

---

[17] The City may also try to argue that the temporary prohibition of billboards and supergraphics is not a *zoning* moratorium. That too is specious. The City's sign ordinance is contained in its zoning code, and state law specifically authorizes cities to regulate billboards through their zoning codes. *See* Cal. Gov't Code § 65850(a).  Moreover, other cities have complied with the law by passing interim billboard moratoria under § 65858.  Luanghy Decl., ¶¶ 11-13, Exhs. J-L.

18

RJN, Exhs. B–D.  However, prior to these two extensions, the City Council did not issue a written report describing the measures taken to alleviate the condition which led to the adoption of the ICO in the first place, as required by Government Code § 65858(d).

Third, after the second extension expired, the City enacted ICO No. 2, in violation of § 65858(f).  RJN, Exh. D.  Indeed, the circumstances behind ICO No. 2 were identical to the circumstances that led to the original ICO – the City wanted to continue prohibiting new off-site signs and supergraphics while it considered changes to its zoning code to deal with the World Wide Rush decision.  Finally, like the original ICO, ICO No. 2 is also valid for ninety days, which violates the 45-day limit in § 65858(a).  *Id.*

Because the ICOs fail to meet the requirements of § 65858, they are invalid.  *See* Martin, 234 Cal. App. 3d at 1765; Clark, 48 Cal. App. 4th at 1173.  As such, the Court should issue an injunction prohibiting the City from enforcing them against Plaintiff.

### C.   The First Preliminary Injunction Order Should Be Amended To Cover All of Plaintiff's Sites

#### 1.   Because the ICO Is Itself Invalid, It No Longer Moots the Need for the First Preliminary Injunction Order to Cover All of Plaintiff's Sites. [18]

This Court already determined that LAMC §§ 14.4.4(B)(9), 14.4.4(B)(11) and 14.4.6 violate the First Amendment.  In addition, this Court already issued a preliminary injunction prohibiting the City from enforcing these sections against three of Plaintiff's sites, each of which had signs erected prior to the effective date of the ICO.  The Court, however, refused to extend the injunction to fifteen other

---

[18] To be clear, Plaintiff seeks to protect 24 sites in the instant motion.  A list of those sites is contained in Exhibit N to the Luanghy Decl.

MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28805596

sites controlled by Plaintiff on the sole basis that the ICO mooted the requested relief.  Specifically, the Court found that because no signs were erected at these sites prior to the effective date of the ICO, and because the ICO appeared to independently prohibit any new signs, the requested injunction against the underlying sign bans was unnecessary.

As demonstrated herein, the ICOs themselves are now invalid, both as an unconstitutional restraint on commercial speech and as a violation of California Government Code § 65858.  As such, the ICOs no longer moot Plaintiff's request for an injunction prohibiting the City from enforcing §§ 14.4.4(B)(9), 14.4.4(B)(11) and 14.4.6, which remain on the books.  Indeed, without an injunction, there is nothing stopping the City from enforcing these unconstitutional bans against Plaintiff's fifteen sites.  The first preliminary injunction order, therefore, should be extended to protect all of the sites listed in Exhibit N to the Luanghy Declaration.

### 2.   Plaintiff Can Now Demonstrate A Substantial Likelihood of Success At 6800-6820 Hollywood Boulevard

As to Plaintiff's site at 6800-6820 Hollywood Boulevard, off-site and supergraphic signage has existed at that site for several years.  Nevertheless, the Court refused to extend the first preliminary injunction order to that site because the Court found that Plaintiff had failed to demonstrate a substantial likelihood of success.  The sole basis for the Court's finding was the fact that Plaintiff had not filed a permit application at that site.  Plaintiff does not think a permit application is necessary for it to seek protection of its First Amendment rights.  *See* City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 755-56 (1988) ("Prior restraint claims are unique [in the context of standing] because the *threat* of the prior restraint itself constitutes the injury in fact.  Thus, a party who is subject to 'a licensing statute allegedly vest[ing] unbridled discretion in a government official

---

20

28805596

over whether to permit or deny expressive activity' may challenge the statute without subjecting itself to the application process.") (internal citations omitted). Indeed, the sign has already been cited as a violation of LAMC § 14.4.4(B)(11) (which this Court has deemed unconstitutional).[19]   Nevertheless, the facts have changed.  Plaintiff recently applied for a permit at this site, and as with every other application submitted to the City, the City categorically refused to even process the application.   Dickerhoff Decl., ¶ 3, Exh. A.   As such, Plaintiff can now demonstrate a substantial likelihood of success for this site, and the first preliminary injunction order should be amended to include it.[20]   In addition, the City should be directed to vacate the Orders to Comply that it issued for this site.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for a second preliminary injunction order prohibiting the City from enforcing the ICO against Plaintiff's signs, and should grant Plaintiff's motion to amend the first

---

[19] Copies of the Orders to Comply are attached as Exhibit M to the Luanghy Decl.

[20] The City previously claimed that this site also should not be included in the preliminary injunction because it was the subject of a prior lawsuit that had been dismissed and that Plaintiff was engaging in forum shopping.  That is not accurate, as the City agreed to dismiss the prior case knowing full well that Plaintiff wanted to include the site in this injunction.  If the City wanted to keep this site in another court, it should not have stipulated to dismiss that case *without prejudice*.  But notwithstanding the City's procedural argument, the plain fact is that there is no substantive reason to deny Plaintiff's request to add the Hollywood Boulevard site. The site is not the subject of any other action; a sign has existed at the site for years; it has been the subject of enforcement efforts by the City (including a pending criminal indictment against the lessors for violating LAMC §§ 14.4.4(B)(9) and (11), which the City refuses to drop in spite of the World Wide Rush decision); there are First Amendment rights at stake; and this Court has already found a First Amendment violation based on the same facts.  The parties are before this Court now, and the issues have been fully briefed.  The Court could easily protect Plaintiff's First Amendment rights at this property by simply adding it to the injunction, and it should.  The alternative is yet another sign lawsuit before another federal judge.

21

1  preliminary injunction order to protect all of Plaintiff's signs from the

2  unconstitutional bans.

3

4  Dated:  July 27, 2009                                  MAYER BROWN LLP

5

6                                                         By: /S/ Andrew T. Kugler_____

7                                                              Andrew T. Kugler
                                                             Attorneys for Plaintiff COMMUNITY
8                                                            REDEVELOPMENT ASSOCIATION,
                                                             LLC, DBA LIBERTY MEDIA GROUP
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22