ANDREW T. KUGLER (SBN 192791)
*akugler@mayerbrown.com*
MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, California  90071-1503
Telephone:   (213) 229-9500
Facsimile:    (213) 576-8126

Attorneys for Plaintiff COMMUNITY
REDEVELOPMENT ASSOCIATION LLC,
dba LIBERTY MEDIA GROUP

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITY REDEVELOPMENT ASSOCIATION, LLC, a California limited liability company doing business as LIBERTY MEDIA GROUP,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, a California charter city,<br><br>Defendant. | Case No. CV-08-07584 ABC (JWJx)<br><br>**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO AMEND FIRST PRELIMINARY INJUNCTION ORDER**<br><br>[Filed concurrently with Supplemental Declaration of Andrew T. Kugler]<br><br>**Judge:   Hon. Audrey B. Collins** |

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO
AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................... 1

II.     THE CITY'S HAS ENGAGED IN REPEATED ATTEMPTS TO
        CIRCUMVENT THIS COURT'S RULINGS AND DEPRIVE
        PLAINTIFF OF THE ABILITY TO OBTAIN RELIEF ........................... 2

III.    ARGUMENT ........................................................................................... 7

        A.   Because of the City's Bad Faith Attempts to Prevent Judicial
             Review of its Actions, Plaintiff Is Entitled to an Injunction
             Prohibiting the City From Interfering With Plaintiff's Ability to
             Erect and Maintain Its Signs .................................................... 7

             1.   The "New" Ordinance Was Simply A Reenactment of
                  the ICO and Did Not Change the "Legislative
                  Landscape" ....................................................................... 7

             2.   California Law Dictates That the "New" Ordinance Not
                  Be Applied to This Plaintiff ........................................... 12

             3.   Equity Also Compels the Court to Fashion Relief for
                  This Plaintiff, and the Court Can Do So In A Way That
                  Holds the City Accountable for its Conduct and That
                  Does Not Open the Floodgates for Sign Proliferation ........... 15

        B.   The ICOs are Invalid As An Impermissible Restriction on
             Commercial Speech .................................................................... 17

        C.   The ICOs are Invalid Because The City Failed to Comply With
             California Government Code § 65858 ...................................... 21

             1.   This Court Has Supplemental Jurisdiction Over
                  Plaintiff's § 65858 Claim ............................................. 21

             2.   Plaintiff's § 65858 Claim Against the Original ICO Is
                  Not Time Barred .............................................................. 22

             3.   Section 65858 Is the Exclusive Method for Enacting
                  Interim Zoning Moratorium ........................................... 22

             4.   The City Did Not Substantially Comply with § 65858. ......... 24

             5.   Government Code § 65010 Does Not Absolve the City of
                  Its § 65858 Violations. ................................................... 24

        D.   The City Did Not Contest Plaintiff's Request to Amend the
             First Preliminary Injunction to Cover All of Its Sites. ................ 25

IV. CONCLUSION ........................................................................................ 25

28806663

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

754 Orange Ave., Inc. v. City of West Haven, Conn.,
   761 F.2d 105 (2d Cir. 1985)..................................................................16

Bank of the Orient v. Tiburon,
   220 Cal.App.3d 992 (1990) .................................................................23

Boos v. Barry,
   485 U.S. 213 (1988)...........................................................................15

City of Mesquite v. Aladdin's Castle,
   455 U.S. 284 (1982)............................................................................9

Coral Springs Street Systems, Inc. v. City of Sunrise,
   371 F.3d 1320 (11th Cir. 2004) ...........................................................9

Covenant Media of California, LLC v. Huntington Park,
   377 F.Supp.2d 828 (C.D. Cal. 2005) ...................................................9

CR of Rialto v. City of Rialto,
   975 F.Supp.1254 (C.D.Cal. 1997) ......................................................24

Dream Palace LLC v. County of Maricopa,
   384, F.3d 990 (9th Cir. 2004) .............................................................10

Gabric v. City of Rancho Palos Verdes,
   73 Cal.App.3d 183 (1977) ...........................................................14, 17

Galt G/S v. Hapag-Lloyd AG,
   60 F.3d 1370 (9th Cir. 1995)..............................................................21

Get Outdoors II, LLC v. City of Lemon Grove,
   378 F.Supp.2d 1232 (S.D.Cal. 2005)..................................................10

Jacobus v. Alaska,
   338 F.3d 1095 (9th Cir. 2003) .............................................................9

Johnson v. U.S.,
   529 U.S. 694 (2000)..........................................................................24

ii

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO
AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

Keizer v. Adams,
    2 Cal.3d 976 (1970) ..........................................................................14

Kuba v. 1-A Agricultural Assoc.,
    387 F.3d 850 (9th Cir. 2004) ...........................................................21

Lamar Advertising Co. v. Township of Elmira,
    328 F. Supp.2d 725 (E.D. Mich. 2004)......................................... 16, 17

Metromedia, Inc. v. City of San Diego,
    453 U.S. 490 (1981)..........................................................................15

Northeastern Florida Chapter of the Assoc. General Contractors of America
    v. City of Jacksonville,
    508 U.S. 656 (1993).............................................................................9

Roark v. South Iron R-1 School District,
    540 F.Supp.2d 1047 (E.D.Mo. 2008) ......................................... 10, 12

Ross v. City of Yorba Linda,
    1 Cal.App.4[th] 954 (1991) ........................................... 12, 13, 14, 16

Southern Pac. Terminal Co. v. ICC,
    219 U.S. 498 (1911)..........................................................................14

Vergara v. City of Waukegan,
    590 F. Supp.2d 1024 (N.D.Ill. 2008) ...............................................20

World Wide Rush, LLC v. City of Los Angeles,
    579 F.Supp.2d 1311 (C.D. Cal. 2008) ...........................................2, 19

World Wide Rush, LLC v. City of Los Angeles,
    605 F.Supp.2d 1088 (C.D.Cal. 2009) ................................................2

**STATUTES**

California Government Code § 65009(c)(1)(B) ......................................22

California Government Code § 65010 .....................................................24

California Government Code § 65858........................................ 21, 22, 23, 24

28806663

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The sleight of hand continues.  This time, the City wants the Court to believe that when its Department of Building and Safety (DBS) inspected and approved the foundation of the new W Hotel in 2007, that counted as the first inspection and approval of sign structures that were ultimately placed on the roof of that building, 15 stories up, two years later, pursuant to completely separate building permits.

The City's argument is absurd.  And, apparently, the City knows it.  After filing its opposition brief, the City all but admitted that the ICO was invalid, and hurriedly reenacted the same moratorium under a different ordinance number so that it could deprive Plaintiff (for a second time) of a remedy before this Court has a chance to rule on a pending motion for preliminary injunction.

Fool me once, shame on you.  Fool me twice, shame on me.  The City cannot be allowed to play games with the First Amendment by reenacting the same unconstitutional law under a new ordinance number in order to avoid an adverse court ruling.  It is time to hold the City accountable for its repeated First Amendment violations.  The Court should take action now and prohibit the City from interfering with Plaintiff's ability to erect and maintain its signs.  Contrary to the City's assertions, if the Court does so, "life as we know it" will not end, and the sky will not fall.  California law makes clear that when a municipality passes a law to thwart a developer's judicial remedies, that developer is entitled to permits.  As such, this Court can easily fashion relief that is limited to this Plaintiff, who, unlike others, has tried to obtain permits for its signs, has complied with this Court's orders, and has acted in good faith.

/ / /

/ / /

/ / /

1

28806663

II.     **THE CITY'S HAS ENGAGED IN REPEATED ATTEMPTS TO CIRCUMVENT THIS COURT'S RULINGS AND DEPRIVE PLAINTIFF OF THE ABILITY TO OBTAIN RELIEF**

This Court previously invalidated the City's ban on off-site signs, supergraphics and freeway-facing signs because they violated the First Amendment. World Wide Rush, LLC v. City of Los Angeles, 579 F.Supp.2d 1311 (C.D. Cal. 2008). That ruling was issued almost one year ago, on August 20, 2008, and came after a preliminary injunction ruling to the same effect issued on June 9, 2008. Now, here we are, a full *fourteen months* after the Court first held the Sign Ordinance unconstitutional, and the City still has not enacted valid time, place and manner regulations for signs. Instead, the City continues to play the same games that got it into trouble in the first place.

Last December, Plaintiff filed a motion for preliminary injunction seeking the same relief that was granted to the World Wide Rush plaintiffs. Although Plaintiff filed that motion four months after the permanent injunction was issued in World Wide Rush, while its motion was pending, the City suddenly passed an "emergency" ICO, ostensibly to prohibit any new off-site signs and supergraphics while it considered a new sign ordinance. The City then used the ICO to deprive Plaintiff of a full remedy on its pending motion, arguing successfully that the newly-passed ICO mooted much of the requested relief against the underlying Sign Ordinance. For the next seven months, Plaintiff dutifully played along and complied with this Court's rulings and the ICO. The City clearly did not. At first, the City ignored the Court's ruling and continued to enforce the unconstitutional provisions of the Sign Ordinance, which resulted in a contempt citation. World Wide Rush, LLC v. City of Los Angeles, 605 F.Supp.2d 1088, 1111 (C.D.Cal. 2009). Then, the City decided to continue bending the law altogether to benefit favored, high-profile developments.

2

28806663

Specifically, the City ignored the ICO's supposed outright ban on new signs, and allowed ten massive off-site signs and supergraphics at favored developments in Hollywood.  When called to answer for that conduct, the City responded in two ways.  First, the City fashioned an absurd argument that the permitted signs were not prohibited by the ICO because construction of the buildings to which the signs were affixed had begun before the effective date of the ICO, and the signs were "integrated" with the buildings.  To make that theory stick, the City argues that inspections and approvals relating to the foundation, framing and concrete of the buildings count as inspections for the signs.  That argument is the quintessential example of a red herring.  The inspections and approvals for the buildings are entirely irrelevant because they relate to work authorized in separate general building permits issued in 2007.  ***The relevant permits here are the sign permits issued in 2008 and 2009, which authorized the construction of the signs.***  The City acknowledges that no work, and no DBS inspections or approvals, occurred on those permits until well ***after*** the ICO was enacted.  As such, the ICO should have prohibited the construction of the signs.  The City's decision to ignore this fact for favored developers demonstrates a clear First Amendment violation.

Knowing that its legal position is highly specious, the City went back to an old playbook for its second response.  Specifically, last Friday, with less than 24 hours notice, the City passed a purported emergency "permanent" ban on new off-site signs and supergraphics.  Without a doubt, the sole purpose of this new ordinance was to deprive Plaintiff of a remedy on the motion pending before this Court.  Why else would the City rush to pass yet another sign ban, when the current ICO is not set to expire until September 24, 2009?  The answer is clear.  As reported in several newspapers, the new ordinance was passed because the City was worried that the ICO would be struck down by this Court.  *See, e.g.,* Supplemental Declaration of Andrew T. Kugler ("Supplemental Kugler Decl."),

3

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

1  Exhs A-I.   Indeed, even the head of the leading anti-billboard coalition
2  acknowledged that the ordinance was enacted "because the moratorium that is in
3  effect right now could be thrown out...."[1]  Id., Exhs. E and H.

4  Of course, the City will now once again claim that, regardless of its motives,
5  "the legislative landscape has again changed," and that the new ordinance moots
6  Plaintiff's requested relief.  But a simple glance at the new ordinance reveals that is
7  not the case.  Indeed, *the new ordinance is exactly the same as the ICO*.  Like the
8  ICO, it bans new off-site signs and supergraphics.   Like the ICO, it contains an
9  exemption for signs that were permitted before the effective date, if the permit
10  holder had performed substantial work in reliance on the permit.  Put simply, the
11  new ordinance did not change the landscape at all.  The City already had a ban in
12  place; it just reenacted that ban under a different number (and with the same
13  procedural infirmities) in order to try to escape an adverse ruling by this Court.

14  The City will likely respond that the new ordinance is different because,
15  unlike the ICO, it is a "permanent" ban.  To accept that argument, however, one
16  would have to "stick their head in the sand."  At the City Council hearing, it was
17  clear that the new ordinance was meant only to respond to Plaintiff's motion and
18  inoculate the current ICO, that it will be a temporary measure, and that it will not
19  slow down the significant efforts that have already been undertaken to craft a new
20  comprehensive sign ordinance.   Indeed, for over six months, the City has been
21  working on the new sign ordinance.  After many public hearings and negotiations

22  _____

23  [1] If the Court needs any more evidence that the City Council rushed to pass this
24  ordinance solely to deprive Plaintiff of a remedy on the pending motion, consider
   the fact that one councilman – who was on a medical leave for a recent surgery –
25  acknowledged that he was asked by the Council President to come back early and
   attend the vote so that the Council would have the quorum needed to pass the
26  ordinance as an urgency measure, thereby making it effective immediately upon
   the Mayor's signature instead of the customary 30 days.  Supplemental Kugler
27  Decl., Exh. D.

28
REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO
AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

with interested stakeholders, a proposed ordinance centered on the creation of various sign districts was approved by the City Planning Commission on March 26, 2009.  Id., Exh. J.  Clearly, the City does not intend to abandon these efforts because of its new, supposedly "permanent" ban on signs.

But don't just take Plaintiff's word for it.  Consider what others, including members of the City Council, City Planning Department, and community groups *opposed* to billboards, are saying.  Before the vote on the new ordinance, one member of the City Council stated that "[t]he challenge is of course for [PLUM Committee Chair] Mr. Reyes who's going to have to take those 17 amendments [to] the other ordinance [proposed by the Planning Commission].  Maybe he can code a few out because of this, I don't know, but bring that back as quickly as possible, bring to the people of Los Angeles the full menu of opportunities that we have to improve billboard blight...."  Id., ¶ 15.  After the vote, that same councilmember was quoted as saying that he "agrees with the [Planning] commission that we need a much broader way to address the issue of signage," and that the "***City Council will consider whether to allow sign districts and step up enforcement when it comes back from its [August] recess***."  Id., Exhs. B and F-G (emphasis added).  At the hearing, another councilmember voiced the same intent to take up the Planning Commission proposal after the August recess, stating:

I would really like, like very much, to vote no today but I know that if I do vote no today that it will carry over and this will continue...I've registered my concerns...and I have a lot of confidence in Mr. Reyes in taking our, some 17 pending motions ***and moving them forward as we come back from recess***.  And so, I will go ahead and do the affirmative act today with a great deal of hesitation and an enormous amount of concern that's still hanging in the air.  And I have a little faith in my colleagues, and again I need to thank Mr. Michaelson

[from the City Attorney's office] because I think without his very pure

advocacy, I don't think that I could reach this point today.

Id., ¶ 16 (emphasis added).

At the same time, the head of the City Planning Department **opposed** the new ordinance because it was "substantially different" than the sign district measure that the City had been considering over the last year and that the Planning Commission had approved in March.  Id., Exh. K.

And again, even the head of the leading anti-billboard coalition admitted that the new ordinance would not slow down the efforts to enact the Planning Commission proposal.  Dennis Hathaway of the Coalition to Ban Billboard Blight said that he favored the comprehensive measure adopted by the Planning Commission, and described the new ban as "completely makeshift to address the immediate situation" and "just a stopgap to prevent any signs while they fine-tune the [Planning Commission] measure."  Id., Exhs. E-F and I.   Several articles reporting on the vote characterized the new ordinance the same way.  *See, e.g.,* Id., Exh. C (editorial stating that "if the City Council passes the emergency moratorium today, council members will still work on the comprehensive billboard ordinance that allows new signage in certain locations and circumstances"); Exh. G (article stating that "[t]he Los Angeles City Council has approved a ban on new billboards that is likely to be revised once members return from their summer recess"); Exh. I (la.curbed.com entry stating that the new ordinance "really just acts as a placeholder until the city can figure out a long-term citywide billboard policy (and its policy for sign districts)").[2]

---

[2] On a related note, several people also expressed grave concerns about the process that led to the enactment of the new ordinance.  In contrast to the months of hearings and negotiations that went into the proposed ordinance adopted by the Planning Commission, this new "permanent" ordinance was adopted without any hearings before the Planning Commission or the City Council's PLUM Committee,

*(Footnote continued on following page)*

6

In sum, there is no question that the City enacted the new ordinance for one reason and one reason only – to deprive Plaintiff of a remedy before the Court could rule on the pending motion.[3]  The City's action had absolutely nothing to do with "changing the legislative landscape" or otherwise enacting the ICO's language on a permanent basis.

## III.   ARGUMENT

### A.   Because of the City's Bad Faith Attempts to Prevent Judicial Review of its Actions, Plaintiff Is Entitled to an Injunction Prohibiting the City From Interfering With Plaintiff's Ability to Erect and Maintain Its Signs

Given that the City's recent actions all but admit that the ICOs are invalid, a response to the substance of the City's opposition brief is probably not necessary. Nevertheless, Plaintiff will respond.  However, it is first necessary to respond to the City's transparent attempt to again moot Plaintiff's requested relief.

#### 1.   The "New" Ordinance Was Simply A Reenactment of the ICO and Did Not Change the "Legislative Landscape"

When this Court ruled last March that much of the injunctive relief requested by Plaintiff was mooted by the City's subsequent passage of the ICO, it

---

*(Footnote continued from previous page)*

without any opportunity for substantive public comment, and with less than 24 hours notice in violation of the Brown Act.  As one member of the City Council put it, "[a]s a policy-making body, in this particular case, we're not using the tools that we have, the careful review, the City Planning Commission, the council's Planning and Land Use Management Committee, and finally, council for this situation." Supplemental Kugler Decl., Exhs. E-G.

[3] The City essentially admitted to this in its recent *ex parte* application to postpone the hearing, when it stated that it was considering a "legislative resolution" to Plaintiff's motion.  Plaintiff opposed that application because it was concerned that the City would again try to misuse the legislative process to deprive Plaintiff of a remedy before the Court could rule on its motion.  Obviously, those concerns were well-founded.

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

concluded that the ICO had "changed the legislative landscape." That did not happen here. The new ordinance passed by the City Council last Friday did not change anything at all.[4]

As a result, this motion cannot be decided by looking at cases where a plaintiff challenged a time, place and manner restriction as unconstitutional, and a city responded by passing a new, different law (such as an outright ban on signs) while the motion was pending. The ICO already purported to ban new signs, and it already exempted signs if a permit had been obtained and substantial work had been completed prior to the effective date. *The new ordinance does the exact same thing*. In form and in effect, the new ordinance is nothing more than the ICO with a different ordinance number at the top.[5]

_____

[4] Although not the subject of this motion, Plaintiff also notes that there are substantial questions about whether the "new" ordinance is itself valid. Indeed, the City claims that this is an "urgency zoning ordinance." But that designation does not even exist under California law. *See* City of Stanton v. Cox, 207 Cal.App.3d 1557, 1561 n.2 (there is no such thing as an "urgency zoning ordinance"). Moreover, given the statements made by members of the City Council and others, it is likely that a court will view the "new" ordinance as just another interim zoning moratorium. Of course, the new ordinance would then be invalid under § 65858. *See* Clark v. City of Hermosa Beach, 48 Cal.App.4th 1152, 1173 (1996) (a municipality cannot take other legislative or policy steps in an attempt to evade the requirements of § 65858); CR of Rialto v. City of Rialto, 975 F.Supp. 1254, 1262-63 (C.D. Cal. 1997) (having once passed an ordinance subject to § 65858, it cannot enact another that it claims to be exempt). Put simply, the City's "keystone cop legislative chase" of Plaintiff's signs is invalid for the same reasons that the ICO is invalid. *See* Stanton, 207 Cal.App.3d at 1561, n.2.

[5] In addition to the fact that the new ordinance did not effect any statutory change, consider that the City still has not repealed the ICO or the unconstitutional provisions of the underlying Sign Ordinance; that the City has not revoked any orders to comply or ceased any criminal prosecutions based on the unconstitutional Sign Ordinance; and that the new ordinance even tries to resurrect the unconstitutional exemptions if its World Wide Rush appeal is successful. Can one reasonably conclude that the City is disavowing its free speech violations and reversing course here?

8

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO
AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

As such, this case is more akin to the circumstances described in <u>City of</u>
<u>Mesquite v. Aladdin's Castle</u>, 455 U.S. 284, 289 n. 11 (1982) (repeal of challenged
language does not moot relief when the repeal does not preclude the city from
reenacting precisely the same provision) and <u>Northeastern Florida Chapter of the</u>
<u>Assoc. General Contractors of America v. City of Jacksonville</u>, 508 U.S. 656, 662
(1993) (amendments to a challenged statute do not moot relief if the new ordinance
disadvantages plaintiff in the same fundamental way as the challenged statute).  In
fact, the situation here is even more deserving of relief.  The City has not repealed
the ICO, has already evidenced its willingness to violate its sign ban, and has
enacted the new ordinance purely as a litigation strategy.  *See* <u>Jacobus v. Alaska</u>,
338 F.3d 1095, 1103 (9th Cir. 2003) (courts particularly concerned where the
government enacted a new statute in response to the prodding effect of litigation).
Moreover, here, there is not just a danger that the City will reenact the offending
law.  The City already did exactly that; it took the same language from the ICO
(which the City clearly thought would be ruled unconstitutional) and slapped a
different ordinance number on it.  Thus, this case is inapposite to <u>Covenant Media</u>
<u>of California, LLC v. Huntington Park</u>, 377 F.Supp.2d 828, 836 (C.D. Cal. 2005),
where the city passed a resolution specifically disavowing the old sign ordinance.

The City's coy attempt to differentiate the new ordinance from the ICO by
styling it as a "permanent" ban should not be countenanced by this Court.  As
demonstrated above, the City Council, the Planning Department, the leading anti-
billboard coalition, and just about everyone else, understands that after the City
Council's August recess, the City will continue working on a comprehensive sign
ordinance that centers on the creation of new sign districts.  As such, the Court can
reasonably infer that the City's attempt to rush through the same exact ban was not
an effort by the City to correct constitutional deficiencies, but one of those rare
cases of a bad faith attempt to avoid judicial review of its conduct.  *See* <u>Coral</u>

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO
AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)
28806663

Springs Street Systems, Inc. v. City of Sunrise, 371 F.3d 1320, 1333 (11th Cir. 2004) ("if the [city] did somehow nurture the intention of reinstating the old, purportedly unconstitutional Sign Code, and actually adopted the Amended Sign Code as a temporary measure whenever another lawsuit appeared on the horizon, we would plainly forbid it from doing so….[W]e [have] specifically warned against the possibility of this kind of 'flip-flopping.'"). *Cf* Get Outdoors II, LLC v. City of Lemon Grove, 378 F.Supp.2d 1232, 1239 (S.D.CA 2005) (no compelling evidence that enactment of new sign ordinance was taken in bad faith or an attempt to avoid judicial review of its ordinance).  Again, that makes the circumstances here entirely different than the ones faced by this Court last March.

Plaintiff understands that the City's cat and mouse game has created unusual facts.  But they are not unprecedented.  The Ninth Circuit has specifically rejected mootness arguments when it became apparent that instead of litigating the merits of an ordinance in an action already before the court, a county chose to amend the challenged provision to unfairly target the litigant.  *See* Dream Palace LLC v. County of Maricopa, 384, F.3d 990 (9th Cir. 2004).

Moreover, in a recent federal court decision that dealt with similar conduct by a government agency, the Court was able to fashion preliminary injunctive relief.  In Roark v. South Iron R-1 School District, 540  F.Supp.2d 1047 (E.D.Mo. 2008), plaintiffs brought a First Amendment challenge to a school board policy allowing Gideon bibles to be passed out at public elementary schools.  A week before plaintiffs' preliminary injunction motion was scheduled to be heard, the school board suddenly changed the policy and argued the motion was now moot. The Court, however, rejected that argument and granted the preliminary injunction. Later, the Court explained its reasoning:

>…It was only at a meeting ten days before the preliminary injunction hearing that the Board unanimously voted to pass the new

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

policy....The Court can reasonably assume from the Board's past actions and comments, and from the timing and circumstances of the new policy and its amendments, that it was passed and changed simply in response to this litigation.  It is the duty of the court to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially if abandonment seems timed to anticipate suit.  U.S. v. W.T. Grant Co., 345 U.S. 629, 632 (1953).

...The School Board defendants may have voted to pass the new policy, but there is absolutely no indication that they did so because they realized that their old practice was flawed and possibly unconstitutional....[One board member even] admits that he thought passing the new policy would negate the need or reason for a preliminary injunction in this case.

...A strong public interest in having the legality of the practice settled, combined with the fact that the defendants would otherwise be free to go back to their past ways, supports the conclusion that the issue here is not moot.  Other considerations by the Supreme Court in the mootness analysis include:  whether the defendant's express intent to comply was bona fide, the effectiveness of the defendant's change, and the character of past violations.  W.T. Grant, 345 U.S. at 633.  The Board's new policy was passed days before the preliminary injunction hearing in an attempt to avoid injunctive relief.  Based on the timing and the character of the defendants' past actions, I cannot conclude that the defendants had bona fide motives and were passing the new policy with a genuine intent to comply with the law.

/ / /

/ / /

11

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO
AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

540 F.Supp.2d at 1055-56.   Again, the Court used this reasoning to grant the plaintiffs injunctive relief.[6]  The Court should do the same here.

### 2.   California Law Dictates That the "New" Ordinance Not Be Applied to This Plaintiff

At the same time, even if the "new" ordinance could somehow be considered to be an intervening statutory change, under the facts present in this case, it should not be applied to moot the relief requested by this Plaintiff.  Ross v. City of Yorba Linda, 1 Cal.App.4th 954 (1991) is instructive.  In that case, plaintiff challenged the wrongful denial of a rezoning application.  While the case was pending, the city passed an amendment to its general plan that supposedly outlawed the plaintiff's requested rezoning.  The court described the City's mootness argument as follows:

> [T]he city argues this case is moot because it amended its general plan after the [plaintiff] filed their complaint…The city's logic goes like this:   A…court must apply the law in existence at the time of its decision.  The new general plan is in effect now so this court must apply it.  Moreover, the [plaintiff] did not yet have a building permit when the plan was enacted, and such a permit is necessary to have a constitutionally recognizable "property right."…Because the [plaintiff] did not amend their pleadings to attack the amendment to the general plan, and the statute of limitations…has already run, they cannot challenge the plan amendment now.  Therefore, the case is moot because the city is now unable to rezone the property consistent with its general plan, which itself is now invulnerable to attack.

---

[6] Unrelated parts of that ruling were overturned by the Eighth Circuit.  However, the appellate court expressly affirmed the district court's mootness analysis.  See Roark v. South Iron R-1 School District, 2009 U.S.App.Lexis 15672 (8th Cir., July 16, 2009).

12

1 Cal.App.4th at 968.

The court then acknowledged that there were two lines of seemingly inconsistent California cases concerning situations where a building permit is wrongly denied and the law changes before a judicial decision is reached.  In one line, courts apply the law that exists on the date of their decision, while in the other, courts apply the law that existed when the permit application was filed.  The court then noted that the California Supreme Court had "reconciled the two lines by noting the cases holding the new law "inapplicable" did so because the new *"enactment stemmed from an attempt to frustrate a particular developer's plans*."  Id. at 647 (emphasis added).  As the court explained:

> A similar idea is contained in the latest edition of the Anderson treatise, which acknowledges a "bad faith" exception to the general rule of applicability of the law as it exists at the time of the [court] decision: "Courts that normally apply the law as it exists on the day of final decision *will not apply an amendment adopted in bad faith* or for the purpose of delay." (4 Anderson, American Law of Zoning (3d. ed. 1986) § 27.38, p. 595, fns omitted, italics added.)
>
> Here, we cannot imagine a more obvious attempt to "frustrate a particular developer's plans."…The city's own records reflect the plan amendment was precipitated by the very rezoning request now before this court….
>
> The city incorrectly denied the…request for rezoning.  The plan amendment is nothing more than the city's attempt to tie its own hands so it supposedly cannot be ordered to do now what it should have done in the first place.  We untie the city's hands by holding the plan amendment inapplicable to the [plaintiff's] rezoning request.

13

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

1  <u>Id.</u> at 969-970; *see also* <u>Gabric v. City of Rancho Palos Verdes</u>, 73 Cal.App.3d 183

2  (1977), (a "change in [an] ordinance is deemed inapplicable if its enactment

3  stemmed from an attempt to frustrate a particular developer's plans").

4      The facts here are indistinguishable.  The City Council clearly enacted the

5  "new" ordinance simply to frustrate Plaintiff's ability to obtain relief on its motion.

6  If this Court were to sanction the City's conduct and apply the "new" ordinance to

7  Plaintiff, it would essentially deprive Plaintiff of a remedy (for a second time).

8  California law and "[a]n ordinary sense of fair play here compels" the conclusion

9  that the "new" ordinance does not apply to Plaintiff, that Plaintiff should have been

10  awarded permits when it applied for them (since there was no valid sign ban at that

11  time), and that the City should be prohibited from preventing Plaintiff from

12  erecting and maintaining its signs now.   <u>Gabric</u>, 73 Cal.App.3d at 203; *see also*

13  <u>Keizer v. Adams</u>, 2 Cal.3d 976, 979-80 (1970).

14      Indeed, if Plaintiff is not granted that relief, consider the alternative.   Is

15  Plaintiff supposed to wait until the City again bends the rules for a favored

16  developer so that it can challenge the latest incarnation of the sign "ban"?  And if

17  so, what if the City again reenacts the ban under a different ordinance number on

18  the eve of the hearing to frustrate Plaintiff's ability to obtain relief? *See* <u>Southern</u>

19  <u>Pac. Terminal Co. v. ICC</u>, 219 U.S. 498, 515 (1911) (mootness does not apply if

20  there is a likely recurrence or repetition of the wrong sought to be enjoined,

21  coupled with a demonstrated tendency to elude review). ***When will it end?***

22      Anything less will lead to three results:  1) it will allow the City to continue

23  bending the law for favored developers; 2) it will leave Plaintiff again unable to

24  exercise its First Amendment rights; and 3) it will provide an incentive for sign

25  operators to engage in self-help.  Consider that sign operators who engaged in self-

26  help and put up signs before the ICO was passed have been protected.  Plaintiff,

27  presumably, could have done the same thing here, and put up its signs before the

28

14

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO
AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

1   City enacted its "new" sign ban.  But Plaintiff decided to again play by the rules,

2   and first seek injunctive relief from this Court.  The First Amendment simply

3   cannot be read to punish Plaintiff while rewarding others who engage in self-help.

4          **3.      Equity Also Compels the Court to Fashion Relief for This

5                  Plaintiff, and the Court Can Do So In A Way That Holds the

6                  City Accountable for its Conduct and That Does Not Open

7                  the Floodgates for Sign Proliferation**

8          In enacting the new ordinance, the City used a common tactic and claimed

9   that if there was an adverse ruling on the ICO, the floodgates would open for new

10  signs and supergraphics.  The City also tries to argue in its opposition that a

11  preliminary injunction would not be in the "public interest."

12         The Court should not be swayed by these arguments.  The real "public

13  interest" issue here is not the effect of a few additional signs in a City that

14  regularly permitted such signs for years.  The real public interest issue is whether a

15  government entity should be allowed to repeatedly abuse free speech rights, and

16  then avoid any responsibility for that conduct by using the legislative process

17  specifically to avoid judicial review.  Whether the complaining party is the ACLU

18  or a sign operator, the resounding answer should be no.  *See, e.g.,* <u>Boos v. Barry</u>,

19  485 U.S. 213, 322 (1988) (we "must tolerate insulting, and even outrageous,

20  speech in order to provide adequate 'breathing space' to the freedoms protected by

21  the First Amendment").   Indeed, regardless of what one thinks about sign

22  operators, the Supreme Court has recognized that signs involve expressive conduct

23  and are thus entitled to First Amendment protection.  *See* <u>Metromedia, Inc. v. City</u>

24  <u>of San Diego</u>, 453 U.S. 490, 502 (1981).  Moreover, it has been 14 months now

25  since this Court enjoined the City's Sign Ordinance.  The City can hardly claim

26  that it has not had the time to enact a valid, comprehensive sign ordinance, and

27  Plaintiff should no longer be disadvantaged by the City's failure to do so.

28

15

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO
AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

1    At the same time, the Court can easily fashion relief to ensure that the "sky

2  does not fall" and that the City is not "wallpapered" with new signs before a

3  comprehensive sign ordinance is enacted.[7]   Specifically, the Court can limit the

4  relief by tying the injunction to the law that existed at the time of the permit

5  application.

6    As stated above, California law requires that, under these facts, the "new"

7  emergency sign ban not be applied to this Plaintiff.  Rather, the law that should be

8  applied to this Plaintiff is the law that existed at the time of Plaintiff's permit

9  applications.  Ross, 1 Cal.App.4[th] at 968-70.   As demonstrated herein (and

10  essentially conceded by the City), at that time, there was no valid ban on signs, and

11  Plaintiff should have been issued its permits.  See id.; see also Lamar Advertising

12  Co. v. Township of Elmira, 328 F. Supp. 2d 725, 732 (E.D. Mich. 2004) (applying

13  law that existed on the date of plaintiff's sign permit applications).  Thus, because

14  this Plaintiff should have been granted permits and allowed to erect signs before

15  the "new" emergency ordinance was passed, the Court should fashion relief that

16  prohibits the City from interfering with this Plaintiff's ability to erect and maintain

17  its signs.[8]

18    That would be the equitable result for *this Plaintiff*, who, unlike others, has

19  complied with this Court's orders and acted in good faith.  See 754 Orange Ave.,

---

21  [7] Most of the negative comments about signs made by citizens and members of the
22  City Council at last Friday's hearing focused, as they always do, on digital
   billboards.  What few appreciate is that the only digital billboards in the City of
23  Los Angeles are the hundred or so erected (with the City's blessing) by Clear
   Channel and CBS Outdoor pursuant to their Settlement Agreements with the City.

24  [8] Of course, the City should be allowed to inspect such signs to ensure structural
25  and electrical safety (i.e. sturdiness of building materials, wind resistance, methods
   of attachment, electrical safety and earthquake safety), provided that the City, as a
26  result of such inspections, shall not issue citations or otherwise take any action
   against Plaintiff unless such citation or action relates solely to structural or
27  electrical safety concerns.

28

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO
AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

1  <u>Inc. v. City of West Haven, Conn.</u>, 761 F.2d 105, 113 (2d Cir. 1985) ("Even as a

2  matter of zoning law . . . a court will not allow changed building zone regulations

3  to act as a bar to a building project where it would be inequitable to do so"); <u>Lamar</u>

4  <u>Advertising</u>, 328 F.Supp.2d at 732 (equity required court to apply law that existed

5  at the time permit applications were filed).  At the same time, such an order would

6  not automatically authorize any other billboard operators to engage in self-help,

7  since the "new" ordinance would purportedly apply to any subsequent applications

8  filed by them.  <i>See</i> <u>Gabric</u>, 73 Cal.App.3d at 202 (court found that old ordinance

9  will apply to plaintiff, while "new ordinance can and will…apply to all new

10  applications for building permits").

11  **B.    The ICOs are Invalid As An Impermissible Restriction on**

12      **Commercial Speech**

13      Turning now to the substance of the City's opposition brief, the City's

14  arguments are clearly specious.  The Court should not be confused by the City's

15  tactics.  The relevant facts here are clear and not in dispute.  Since December 26,

16  2008, the ICO prohibited new off-site signs and supergraphics, with one exception.

17  The ICO did not "apply to any *building permit* issued prior to" December 26,

18  2008, if, prior to that date, the permit holder performed substantial work and

19  incurred substantial liabilities in good faith reliance on *that* permit.  To be

20  considered substantial, the work performed must have progressed to the point that

21  DBS performed an inspection, and the inspection must have resulted in an

22  approval.

23      The City does not (and cannot) dispute the fact that building permits were

24  issued in 2008 for the construction of the ten massive off-site signs and

25  supergraphics cited in Plaintiff's motion.[9]  Moreover, the City does not (and

26

27  [9] *See, e.g.,* Declaration of France P. Luanghy ("Luanghy Decl."), Exh. A (permit
work    description    states    "***CONSTRUCT***    8    SIGNS    FOR    THE    W

28                                                17                    (*Footnote continued on following page*)

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO
AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28800663

cannot) dispute the fact that DBS did not perform any inspections or issue any approvals for the work authorized by *those sign permits* until May 2009. Indeed, DBS did not even inspect and approve the "foundation" or "footing" of the signs until May 2009. Luanghy Decl., Exhs. A and E.

End of story. The ICO, by its clear terms, should have prohibited the work authorized by the 2008 permits. In other words, the ICO should have prohibited the construction of the actual signs.

The City's opposition tries to confuse this simple fact by claiming that the signs were "integrated" with the buildings, and that the inspections for the foundation, framing and concrete of the buildings count as inspections for the signs.[10] That argument is easily dismissed. The inspections and approvals cited by the City relate to general building permits issued for construction of the buildings in 2007. The relevant permits here are the building permits issued in 2008, which authorized the *construction of the actual signs*. Indeed, if the general building permits issued in 2007 authorized construction of the signs (as the City claims), then why did the City issue separate permits in 2008 to "construct" the signs?

The answer is obvious. The City issued the 2008 permits because those permits were needed to authorize construction of the actual signs. When the City decided to ignore the ICO and allow the work authorized by those permits to proceed, while categorically denying Plaintiff's applications, it violated the First

---

*(Footnote continued from previous page)*

HOTEL/CONDO") (emphasis added). In addition, the City's opposition brief even characterizes the permits as "[b]uilding permits for signs." *See* Opposition at pg. 6, line 18.

[10] Interestingly, if this was truly the City's position all along and not a *post hoc* attempt to explain its First Amendment violations, then why did the City argue that an injunction protecting Plaintiff's proposed supergraphics was mooted by the ICO? Plaintiff's supergraphics are also "integrated" with the buildings, in that they are attached to the face of the buildings. Under the City's interpretation, then, Plaintiff's signs should also fall within the lone exemption to the ICO.

18

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO
AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

Amendment.  Indeed, the City's conduct here is no different than the City ignoring its ban on freeway-facing signs to benefit the Staples Center and 15th Street SUD developers, which this Court has already deemed to constitute a commercial speech violation.  As such, for the same reasons articulated by this Court in <u>World Wide Rush</u>, the City's conduct undermines its interests in the ICO, and the ICO is invalid.  <u>World Wide Rush</u>, 579 F.Supp.2d at 1324-28.[11]

The City's only fall-back position is to downplay its conduct and characterize it as a "mistake" that does not give rise to a First Amendment violation.  The City also tries to claim that instead of bringing an action to protect its First Amendment rights, Plaintiff should be required to pursue an administrative appeal or state court action that seeks to invalidate the permits granted by the City to favored developers at the W Hotel and 6904 Hollywood Boulevard.[12]

The City is missing the point.  Plaintiff is trying to protect its First Amendment rights; it is not asking this Court to invalidate permits issued to third parties.  Plaintiff simply cited to those permits as evidence that the City has ignored the ICO for its favored developers, and that as a result, the ICOs are invalid as an impermissible restriction on commercial speech.  The "due process"

---

[11] On a related note, footnote 1 of the City's opposition characterizes Plaintiff's citation to <u>Desert Outdoor Advertising, Inc. v. City of Oakland</u>, 506 F.3d 798 (9th Cir. 2007), for the proposition that the City was applying the ICO in a discriminatory manner, as "completely frivolous" and "absurd on its face." Plaintiff is confused by this attack, as that citation was lifted directly from this Court's decision in <u>World Wide Rush</u>. *See* 579 F.Supp.2d at 1326.

[12] The City makes a related argument in its opposition and in a subsequently-filed *ex parte* application that this Court should invoke <u>Pullman</u> abstention and refrain from ruling on the validity of the ICO.  For the same reasons articulated in Plaintiff's opposition to the *ex parte* application, that argument is frivolous.  Under <u>Porter v. Jones</u>, 319 F.3d 483 (9th Cir. 2003), <u>Pullman</u> abstention is not appropriate in First Amendment cases – like this one – absent extraordinary procedural circumstances not present here.

28806663

1  rights of the City's favored developers are not implicated by this proceeding[13], and

2  Plaintiff should not be forced to do the City's job by spending its time and money

3  trying to revoke permits that should not have been finaled.

4        At the same time, contrary to the City's position, these permits were not

5  simple "mistakes" or "misinterpretations" by DBS.  In an effort to downplay its

6  conduct, the City's opposition suggests that DBS alone misconstrued the ICO and

7  allowed these massive off-site signs and supergraphics to be constructed.

8  However, the evidence tells a very different story.  Each of the eight permits issued

9  by DBS for the W Hotel and Residences clearly states that the "***City Attorney*** has

10  determined that these signs were vested" under the ICO.  *See* Declaration of

11  Stephanie Saenz ("Saenz Decl."), Exh. A (emphasis added).  Clearly, this was not

12  some clerical or interpretational error at DBS.  Multiple agencies (including the

13  City Attorney's office) considered the ICO's impact on these permits and

14  participated in the decision to allow the signs to be erected notwithstanding the

15  ICO.  The City's attempt to characterize its conduct as a DBS "mistake" is thus

16  belied by the facts and, regardless, does not absolve it of First Amendment

17  liability.  When administrators of a municipal ordinance apply that ordinance in a

18  manner that violates the First Amendment, that is a First Amendment violation, not

19  a mistake subject to a "do-over."  *See, e.g.,* <u>Vergara v. City of Waukegan</u>, 590 F.

20  Supp. 2d 1024, 1045 (N.D.Ill. 2008) (City officials' application of law in

21  discriminatory manner violates First Amendment.)

22        In sum, because the City used the ICO to categorically reject Plaintiff's

23  permit applications and prohibit Plaintiff's signs, while simultaneously ignoring

24

25  [13] Indeed, if this Court agrees with Plaintiff that the ICOs are invalid, that ruling
26  will have absolutely no effect on any third-party permits or on the ability of the W
   Hotel and 6904 Hollywood Boulevard to maintain signs that have already been
27  erected.

28

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO
AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

1    the ICO to benefit favored developers, the ICOs are invalid as an impermissible

2    restriction on commercial speech.

3         **C.    The ICOs are Invalid Because The City Failed to Comply With**

4                     **California Government Code § 65858**

5         Given the clear First Amendment violations articulated above (and

6    essentially conceded by the City's recent actions), this Court does not have to

7    reach Plaintiff's Government Code § 65858 claim in order to invalidate the ICOs.

8    Nevertheless, the City's opposition fails to rebut this violation either.

9         **1.    This Court Has Supplemental Jurisdiction Over Plaintiff's §**

10                 **65858 Claim**

11        The City first claims that the Court lacks supplemental jurisdiction over

12   Plaintiff's § 65858 claim.  The City bases this argument on its assertion that there

13   is no "common nucleus of operative fact" between the § 65858 claim and the rest

14   of the lawsuit.  The City's position should be rejected.

15        The ICO, by its very terms, was enacted in response to the First Amendment

16   claims at issue in this case.  Moreover, the City specifically introduced the ICO

17   into this case by arguing that it mooted the need for Plaintiff to obtain much of its

18   requested relief against the unconstitutional provisions of the underlying Sign

19   Ordinance.  In March, this Court agreed and refused to amend the existing

20   preliminary injunction order to protect many of Plaintiff's sites.  Whether or not

21   the City validly enacted the ICO, therefore, is very much integral to the question of

22   whether Plaintiff's is entitled to obtain injunctive relief that protects all of its sites.

23   At the same time, the alleged injury to Plaintiff on both claims is the same (i.e., the

24   City refused to process Plaintiff's permit applications, citing an invalid ICO).

25        Under these circumstances, the claims against the ICO should be tried in one

26   judicial proceeding.  *See* <u>Kuba v. 1-A Agricultural Assoc.</u>, 387 F.3d 850, 855-56

27   (9th Cir. 2004).  The case cited by the City, <u>Galt G/S v. Hapag-Lloyd AG</u>, 60 F.3d

28

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO
AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

1   1370 (9th Cir. 1995), is inapposite.  In that case, the court considered whether a trial

2   court should have dismissed a state law claim against an entirely different *party*,

3   and federal jurisdiction was already questionable.

4        **2.      Plaintiff's § 65858 Claim Against the Original ICO Is Not**

5            **Time Barred**

6        The City next claims that Plaintiff's challenge to the original ICO is barred

7   by California Government Code § 65009(c)(1)(B).  This is incorrect.  Section

8   65009(c)(1)(B) provides a 90-day statute of limitation to challenge the adoption or

9   amendment of a "zoning ordinance," not a moratoria like the one at issue here.

10       Moreover, even if § 65009(c)(1)(B) does apply to the original ICO, the City

11  passed a second extension to that ICO on May 5, 2009.  Plaintiff filed its amended

12  complaint and motion on July 27, 2009, less than 90 days thereafter.  Thus, §

13  65009(c)(1)(B) does not apply to the original ICO.  And it goes without saying that

14  § 65009(c)(1)(B) does not apply to ICO No. 2, which was adopted by the City on

15  June 9, 2009, and is currently in effect.

16       **3.      Section 65858 Is the Exclusive Method for Enacting Interim**

17           **Zoning Moratorium**

18       As expected, the City also claims that it did not have to comply with §

19  65858 because it followed its procedures for adopting zoning ordinances set forth

20  in LAMC § 12.32.[14]  In making that argument, the City fails to address the detailed

21  legislative history cited in Plaintiff's motion, which conclusively demonstrates that

22  _____

23  [14] Although not necessary to reject the City's argument, Plaintiff notes that the City
    did not even follow its own procedures when it adopted the ICO.  For example,
24  only the City Council, City Planning Commission or the Director of Planning can
    initiate a zoning ordinance.  *See* Los Angeles City Charter § 558(b)(1).  Yet here,
25  the ICOs were initiated by the City Attorney's Office.  Moreover, LAMC §
    12.32C(4)(a) requires publication of the ordinance not less than 24 hours prior to
26  the date of the hearing.  Here, the City published the ordinance on December 26,
27  2008, nine days after it was enacted by the City Council.

28

                                      22

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO
AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

the Legislature added charter cities to § 65858 to prevent them from prohibiting
unpopular land uses with indefinite moratoria.

Nevertheless, the City is missing the point.  Section § 65858 is not
discretionary; it is mandatory for interim zoning moratoria.  The reference touted
by the City in the first sentence of § 65858 does not mean that the City can ignore
§ 65858 and follow some other municipal code procedure to enact an interim
zoning moratorium.  It simply means that in enacting such a moratorium, the City
does not have to follow all the procedures otherwise outlined in Chapter 4 of Title
VII of the Government Code (which apply, generally, to permanent zoning
ordinances).

Indeed, the City's argument was expressly rejected in <u>Bank of the Orient v.
Tiburon</u>, 220 Cal.App.3d 992, 1004-05 (1990), *overruled in part on unrelated
grounds*, <u>Morehart v. County of Santa Barbara</u>, 7 Cal.4th 725 (1994).  In that case,
the court wrote:

> According to the town, it may enact zoning moratorium ordinances by
> merely following regular zoning procedures, i.e., planning commission
> notice and hearing, recommendation to council, public hearing,
> council action subject to referendum.  But this view finds no support in
> the relevant legislative history...[With § 65858], the Legislature
> intended to occupy the entire field of interim zoning moratoria.

7 Cal.4th at 1004-05.

As demonstrated in the Plaintiff's moving papers, the City's reading also
contradicts the Legislature's express intent and common sense. The Legislature
added "charter cities" to § 65858 to close the loophole that allowed charter cities to
prohibit unpopular land uses with indefinite moratoria.  RJN, Exhs. F-H.  If the
City can ignore § 65858 simply by enacting a zoning moratorium under LAMC §
12.32, then the protections found in § 65858 would be meaningless.  Courts should

23

REPLY BRIEF IN SUPPORT OF MOTION FOR SECOND PRELIMINARY INJUNCTION ORDER AND TO
AMEND FIRST PRELIMINARY INJUNCTION ORDER – CV-08-07584 ABC (JWJx)

28806663

1    interpret statutes to effectuate the legislative intent and avoid an absurd result.

2    Johnson v. U.S., 529 U.S. 694, 707 (2000).

3              **4.    The City Did Not Substantially Comply with § 65858.**

4              Next, the City claims that it substantially complied with § 65858.  That claim

5    is easily dismissed.  Courts are to strictly construe the limitation provisions of §

6    65858.  CR of Rialto v. City of Rialto, 975 F. Supp. 1254, 1262 (C.D.Cal. 1997).

7    Section 65858(f) states that a legislative body may enact a second interim

8    ordinance only if it involves a different event, occurrence or set of circumstances

9    than the original one.  The City does not even try to contest the fact that ICO No. 2

10   involved the same circumstances as the original ICO.  In fact, the City concedes

11   that "[i]n all intents and purposes, [ICO No. 2] is nothing more than an extension

12   of [the original ICO]."  Opposition at pg. 20.  Thus, the City clearly violated §

13   65858(f) in enacting the second ordinance.

14             The fact that the extensions on the original ICO were less than the City could

15   have enacted under § 65858 is irrelevant.  Section 65858 is to be strictly construed,

16   so after the City enacted the first ICO and its two extensions, it was not allowed to

17   enact a second ICO based on the same circumstances.  ICO No. 2, therefore, is

18   facially void.  See Rialto, 975 F. Supp. at 1262-63 (invalidating second moratorium

19   even though there was an 11-year period between the two moratoria).

20             **5.    Government Code § 65010 Does Not Absolve the City of Its**

21                    **§ 65858 Violations.**

22             Finally, the City claims that Plaintiff has not shown that it was prejudiced or

23   substantially injured by the City's failure to follow § 65858, and that as a result,

24   relief is barred by Government Code § 65010.  That is wrong.  The City's

25   argument again ignores the fact that it was the City that introduced the ICO into

26   this case in order to moot Plaintiff's ability to obtain injunctive relief against the

27   unconstitutional provisions of the underlying Sign Ordinance.  Plaintiff, in fact,

28

                                            24

was prevented from obtaining that relief, despite the fact that irreparable harm is presumed in First Amendment cases.  By illegally passing ICO No. 2, then, the City was able to perpetuate the harm to Plaintiff.  Put differently, but for the invalid ICOs, Plaintiff would have long ago had an injunction protecting its free speech rights at all of its properties.  The City can hardly claim, now, that Plaintiff has not been prejudiced or substantially injured by the City's conduct.

**D.     The City Did Not Contest Plaintiff's Request to Amend the First Preliminary Injunction to Cover All of Its Sites.**

Finally, Plaintiff notes that the City did not contest its request to amend the first preliminary injunction order to cover all of its sites.  For the same reasons stated in its motion, therefore, the first preliminary injunction order should be amended to cover all of its sites.  Moreover, regardless of how the Court rules regarding the ICO claims, the Court should extend the first preliminary injunction order to Plaintiff's sites on Hollywood Boulevard, 11625 Olympic Boulevard, and Washington Boulevard, where signs preexisted the ICO.

## IV.     CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion and issue a second preliminary injunction order prohibiting the City from interfering with Plaintiff's ability to erect and maintain its signs.  In addition, the Court should grant Plaintiff's uncontested motion to amend the first preliminary injunction order to protect all of Plaintiff's signs from the unconstitutional bans.

Dated:  August 10, 2009                              MAYER BROWN LLP


By: /s/ Andrew T. Kugler
Andrew T. Kugler
Attorneys for Plaintiff COMMUNITY
REDEVELOPMENT ASSOCIATION,
LLC, DBA LIBERTY MEDIA GROUP

28806663